J-S46039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CLAY D. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 2704 EDA 2014 |

Appeal from the PCRA Order entered on August 20, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0505851-2005

BEFORE: MUNDY, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED SEPTEMBER 16, 2015**

Clay D. Williams ("Williams") appeals from the Order dismissing his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

This Court previously has set forth the relevant underlying facts as follows:

> On the night of March 10, 2005, at approximately 12:17 AM, [*sic*] Mizael Velez ["Velez"] was shot and killed at a Chinese store located on 701 East Thayer Street, Philadelphia, Pennsylvania. Velez had ordered Chinese food from the store a little earlier, and had walked to the store from his home, a few blocks away, to pick up the food. While Velez was waiting in the store, Dante Moore ["Moore"], a friend of [Williams], walked in the store. [Williams], wearing a leather jacket and [with] a sawed-off shotgun up his sleeve, walked into the store a minute or so after Moore.
>
> Velez was wearing his cell phone on his hip. [Williams] demanded the phone from Velez, with the intention of robbing Velez. Velez refused to surrender the phone and [Williams] left

the store. Moore then left the store to walk home and saw [Williams] outside. [Williams] then walked back into the store and shot Velez once. Velez was struck in his left arm and his abdomen.

After shooting Velez, [Williams] then ran out of the store. Moore, who was walking home, heard the shot and saw [Williams] run by him on the 700 block of Thayer Street. After [Williams] fled, Vicky Lyn, the owner of the Chinese store[,] called the police.

Officer [Avon] Wilson, of the Philadelphia Police Crime Scene Unit, testified that there was no ballistic evidence found in the store or in the clothes that [Velez] was wearing at the time of the shooting. However, Dr. Bennett Preston, Assistant Medical Examiner of the City of Philadelphia, found twenty-one shotgun pellets and a shotgun cup in Velez's body.

The gun [Williams] used [on] March 10, 2005, was recovered by police on March 22, 2005. The gun, along with a number of shells, was found in a book bag in the basement of 806 East Thayer Street. The nephew of the owner of the house, [] Khalil Wright [("Wright")], was a friend of [Williams]. Wright admitted that [Williams] gave Wright the book bag to keep down [in] the basement [*sic*] the day before it was recovered by police.

Kenneth James Lay ["Lay"] of the Philadelphia Firearms Identification Unit examined the shotgun and the ballistic evidence removed from [Velez's] body. [] Lay testified that he determined that the shotgun cup found in Velez's body was consistent with the same type of shotgun recovered from 806 East Thayer Street, but he could not conclude the shot[gun] cup was fired from that specific weapon.

[Williams] was taken into custody on an unrelated warrant on March 22, 2005[,] at approximately 7:15 a.m. He was placed in an interview room at approximately 8:00 a.m.[,] where Detective Don Marano ["Detective Marano"] advised him that he wanted to interview him about Velez's death. At about 1:00 p.m.[, Williams] indicated that he wanted to make a formal statement. After giving him ***Miranda***[1] warnings, which he

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

- 2 -

waived, [Williams] told [] Detective Marano that he had gone to the Chinese store the night of March 10, 2005[,] and he had tried to steal a cell phone from the man in the store. While so engaged his gun went off and he fled.

\*\*\*

At the conclusion of trial, a jury found [Williams] guilty of First Degree Murder, Robbery, Firearms not to be carried without a license, Carrying firearms on public street or public property in Philadelphia, and Possessing Instruments of Crime. On December 5, 2006, the sentencing court ordered [Williams] to serve life in prison without the possibility of parole on the Murder conviction, ten (10) years to twenty (20) years in prison on the Robbery conviction, and three (3) years and (6) months to seven (7) years in prison on the Firearms not to be carried without a license conviction. The latter two offenses were to be served concurrently to the Murder sentence, and [Williams] received no further penalty on the remaining two convictions.

*Commonwealth v. Williams*, 959 A.2d 1252, 1253-54 (Pa. Super. 2008) (citations and footnotes omitted, footnote added). This Court affirmed the judgment of sentence. *See id.* at 1255-60.[2]

On October 6, 2009, Williams filed a timely *pro se* PCRA Petition. The PCRA court appointed Williams counsel. Following a review of the Petition and the record, counsel filed a "no-merit" letter and a Motion to Withdraw as counsel. After counsel was allowed to withdraw, Williams retained new counsel, who filed an amended PCRA Petition. The PCRA court filed a

---

[2] On direct appeal, Williams raised claims regarding the sufficiency of the evidence, the denial of a Motion to suppress his confession, and evidentiary rulings. This Court concluded that his sufficiency and suppression claims were waived for lack of specificity in his Rule 1925(b) Concise Statement. *See Williams*, 959 A.2d at 1256-58. This Court also concluded that the evidentiary rulings claim was waived for failure to properly develop the claim in his appellate brief. *See id.* at 1258.

- 3 -

Pa.R.Crim.P. 907 Notice of Intent to Dismiss without a Hearing. Williams

filed a Response. Thereafter, the PCRA court dismissed the Petition.

Williams filed a timely Notice of Appeal.

On appeal, Williams raises the following questions:

I.     Did the [PCRA] court err in failing to order [an] evidentiary
       hearing on the issues of appellate counsel's ineffectiveness
       on appeal from the judgment of sentence[e] because
       [Williams] raised a material issue of fact in this matter
       when [Williams] showed conclusively[,] based on the
       appellate court opinion[,] that appellate counsel waived all
       [] issues on appeal from the judgment of sentence?

II.    Did the [PCRA] court err in failing to reinstate [Williams's]
       right to appeal from the judgment of sentence *nunc pro
       tunc* where appellate counsel's performance was so
       deficient as to effectively deny both the right to an appeal
       and the right to counsel on appeal?

III.   Did the [PCRA] court err in denying [Williams] an
       evidentiary hearing on the issue of trial [] counsel's
       ineffective assistance for failing to object to prejudicial and
       improper questions [by] the prosecutor to [Williams] at the
       suppression hearing?

Brief for Appellant at 2.

This Court's standard of review regarding a PCRA court's
order is whether the determination of the PCRA court is
supported by the evidence of record and is free of legal error.
Great deference is granted to the findings of the PCRA court, and
these findings will not be disturbed unless they have no support
in the certified record.

***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011) (citations

and quotation marks omitted).

In his first claim, Williams contends that his direct appeal counsel was

ineffective for failing to properly preserve his "appealable issues," including:

- 4 -

(i) the denial of Williams's Motion to suppress his statements; (ii) the trial court allowing Detective Howard Peterman ("Detective Peterman") to read Moore's prior statement to the police, identifying Williams as the shooter; and (iii) insufficient evidence to sustain the convictions. Brief for Appellant at 7, 9.[3] Williams argues that the PCRA court should have held an evidentiary hearing on this claim. *Id.* at 8-9.

To succeed on an ineffectiveness claim, Williams must demonstrate by the preponderance of the evidence that

> (1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to be effective and the burden is on Williams to prove otherwise. *Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011).

"When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary." *Commonwealth v. Ogrod*, 839 A.2d 294, 320 (Pa. 2003). "A confession obtained during a

---

[3] While Williams identifies the issues that were waived on direct appeal, he fails to provide a substantive discussion as to each issue to demonstrate counsel's ineffectiveness. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Baumhammers*, 92 A.3d 708, 743-44 (Pa. 2014). Nevertheless, we will address his ineffectiveness claims.

custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights." *Commonwealth v. Davis*, 861 A.2d 310, 317 (Pa. Super. 2004) (citation omitted). "[T]he standard for determining whether a statement is voluntary is based on the totality of the circumstances." *Ogrod*, 839 A.2d at 320.

Here, Detective Marano testified that Williams was arrested on an unrelated matter and transported to the police department around 8:00 a.m. on March 22, 2005. N.T., 8/28/06, at 7-8. Williams was placed in an interview room without handcuffs. *Id.* at 8. Detective Marano informed Williams that the interview was in relation to the Chinese store shooting. *Id.* at 9. Additionally, Detective Marano orally informed Williams of his *Miranda* rights. *Id.* at 10-11. Williams stated that he was aware of his rights and that this was not his first contact with the law. *Id.* at 11. Over the next few hours, Detective Marano and other detectives had intermittent interactions with Williams regarding the shooting. *Id.* at 12. During that time, the detectives were also interviewing other witnesses to the shooting. *Id.* At approximately 1:00 p.m., Williams indicated that he wanted to make a formal statement. *Id.* at 11-13. Detective Marano again provided Williams with *Miranda* warnings. *Id.* at 13-16. Williams signed waiver documents indicating he understood the rights he was waiving. *Id.* at 14-15. After Williams waived his rights, he confessed to shooting Velez while

trying to steal Velez's phone. *Id.* at 21-24. According to Williams, however, he was coerced into a confession. *Id.* at 49-51. While Williams conceded that he signed the waiver documents, he stated that he signed blank documents. *Id.* at 52-54.

The trial court found Detective Marano's testimony to be credible and Williams's to not be credible. *Id.* at 89-90; *see also Commonwealth v. Rochon*, 581 A.2d 239, 243 (Pa. Super. 1990) (stating that the suppression court is free to reject defendant's testimony). The trial court found

> the statement was given voluntarily, without threats or force. [Williams] voluntarily gave up his right to remain silent and that … he was taken into custody lawfully on another warrant and that he was properly warned of his right to remain silent during the interrogation and that after being warned, after signing the warnings, and after being questioned and signing that attestation, that was all done voluntarily.

N.T., 8/28/06, at 90. Upon review of the record and relevant case law, we conclude that the trial court properly denied the Motion to suppress. *See Commonwealth v. King*, 721 A.2d 763, 774-75 (Pa. 1998) (stating that when *Miranda* rights are provided, waived, and the waiver is signed, the statement is admissible); *Commonwealth v. Jones*, 683 A.2d 1181, 1189 (Pa. 1996) (concluding that inculpatory statements were voluntarily given where appellant read and understood the *Miranda* warnings, there was not a coercive environment, and appellant was alert and coherent during questioning).

We will next address Detective Peterman's testimony reading Moore's initial statement to the police into the record.

> Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability. The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. With respect to the first prong, that the statement is given under reliable circumstances, our supreme court has deemed reliable only certain statements; among them is a statement that is reduced to a writing and signed and adopted by the witness. With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test.

*Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa. Super. 2002) (citations and quotation marks omitted).

Following the shooting, Moore provided a signed statement to the police identifying Williams as the shooter. N.T., 8/29/06, at 92-93, 113, 116, 171, 173-77. However, at trial, Moore admitted that while he was at the Chinese restaurant, he could not identify the shooter. *Id.* at 79-85. The Commonwealth then introduced Moore's statement and questioned Moore about his prior identification of Williams as the shooter. *Id.* at 92-93, 113-33. Moore maintained that he never identified Williams as the shooter to the police. *Id.* at 92-94, 124-26, 134-36; *see also id.* at 133-53 (wherein Williams's attorney examined Moore about his trial testimony and initial

- 8 -

statement to the police).   Thereafter, over Williams's objection, Detective Peterman, who took Moore's statement, read Moore's initial statement into the record.  ***Id.*** at 173-77.

Based upon the foregoing, the trial court did not abuse its discretion in allowing Detective Peterman to read Moore's statement into the record and Williams's ineffectiveness claim is without arguable merit.  ***See Hanible***, 30 A.3d at 446-47 (concluding that a witness's written statement given to police identifying the appellant as the shooter, which was confirmed by both the witness and the detective taking the statement to have been signed by the witness, but which was repudiated by the witness at trial, was admissible as substantive evidence).  Moreover, Williams cannot demonstrate prejudice as he confessed to the crimes.  ***See Commonwealth v. Burno***, 94 A.3d 956, 977 (Pa. 2014) (concluding that appellant failed to demonstrate he was prejudiced by counsel's alleged ineffectiveness where he confessed to committing the crimes).

With regard to Williams's sufficiency claim, multiple witnesses identified Williams as the shooter, and Williams provided a detailed confession to the crimes.  ***See*** Trial Court Opinion, 6/26/07, at 7-8 (unnumbered).  This evidence is sufficient to sustain Williams's convictions.

Since all of the "appealable issues" are deemed to be without merit, counsel cannot be ineffective for failing to properly raise the claims.  ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006) (stating

counsel cannot be deemed to be ineffective for failing to raise a claim lacking merit). Furthermore, because Williams's claims do not have support in the record, the PCRA court did not err in dismissing the Petition without a hearing. **See Carter**, 21 A.3d at 682 (stating that "a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that a petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence.").

In his second claim, Williams contends that his right of appeal should have been reinstated *nunc pro tunc*. Brief for Appellant at 10-11. Williams argues that he is entitled to a new appeal because counsel raised ineffectiveness of counsel claims that could only be addressed on collateral review, and did not properly preserve the other claims. **Id.** at 10.

"It is well-settled that an accused who is deprived entirely of his right of direct appeal by counsel's failure to perfect an appeal is *per se* without the effective assistance of counsel, and is entitled to reinstatement of his direct appellate rights." **Commonwealth v. Grosella**, 902 A.2d 1290, 1293 (Pa. Super. 2006) (citations and quotation marks omitted).

> However, it is also well-settled that the reinstatement of direct appeal rights is not the proper remedy when appellate counsel perfected a direct appeal but simply failed to raise certain claims. Where a petitioner was not **entirely** denied his right to a direct appeal and only some of the issues the petitioner wished to pursue were waived, the reinstatement of the petitioner's direct appeal rights is not a proper remedy.

**Id.** at 1293-94 (emphasis in original).

- 10 -

In **Grosella**, appellate counsel raised only an ineffective assistance of counsel claim. **Id.** at 1291. This Court stated that "[a]lthough appellate counsel apparently did not pursue all of the issues Appellant wished to raise on direct appeal, this is not a case where appellate counsel failed to perfect a direct appeal." **Id.** at 1294. "The fact this Court concluded on direct appeal that case law required the dismissal of the ineffective assistance of counsel claim, without prejudice, makes no difference to [the] analysis." **Id.**

As in **Grosella**, direct appeal counsel took the necessary steps to ensure that this Court would consider Williams's appeal. **See id.** Therefore, Williams was not **entirely** denied his right to direct appeal, and the PCRA court did not err in denying reinstatement of Williams's appellate rights *nunc pro tunc*.

In his third claim, Williams contends that trial counsel was ineffective for failing to object to allegedly improper and prejudicial questioning of him by the prosecutor at the suppression hearing. Brief for Appellant at 12-14.

Initially, Williams has failed to cite to the place in the record showing the improper questions, and only makes bald assertions that counsel was ineffective. **See** Pa.R.A.P. 2119(a); **see also Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014). In any event, Williams has not argued that the allegedly prejudicial questions demonstrated that his confession was involuntary. **See** PCRA Court Opinion, 12/3/14, at 7 (stating that the "[trial c]ourt did not consider the [questioning] by the prosecution

- 11 -

for the truth of the matter contained therein. Rather, [the trial c]ourt considered them solely to determine whether [Williams] gave his statement voluntarily."); *see also Commonwealth v. Davis*, 421 A.2d 179, 183 n.5 (Pa. 1980) (stating that "[a] judge, as factfinder, is presumed to disregard inadmissible evidence and consider only competent evidence."). As noted above, the totality of the circumstances evidence that Williams voluntarily confessed to the shooting. Thus, Williams's ineffectiveness of counsel claim is without merit, and the PCRA court did not err in dismissing this claim without a hearing. *See Carter*, 21 A.3d at 682.

Based upon the foregoing, the PCRA court's decision to dismiss Williams's Petition without a hearing is supported by the record.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2015

---

[4] We note that in his Rule 1925(b) Concise Statement, Williams also raises claims regarding juror misconduct and a failure by the Commonwealth to disclose evidence. However, Williams has not raised these claims in his appellate brief or in his PCRA Petition. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (stating that "issues not raised in a PCRA petition cannot be considered on appeal.") (citation omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Thus, we will not review the claims.