J-S01011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM KOREY LAWRENCE, JR. | : | |
| | : | |
| Appellant | : | No. 594 MDA 2018 |

Appeal from the Judgment of Sentence March 9, 2018
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0004658-2016

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PANELLA, P.J.:         **FILED SEPTEMBER 13, 2019**

William Korey Lawrence appeals from the judgment of sentence entered after a jury convicted him of two counts of simple assault, one count of unlawful restraint, one count of indecent assault, one count of involuntary deviate sexual intercourse, one count of sexual assault, and one count of aggravated indecent assault.[1]  We affirm.

Appellant was arrested on August 30, 2016, by the Manheim Township Police Department for a series of sexual assaults of his paramour.  Appellant's actions "lasted through the night [of August 29, 2016,] and continued from

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa. C.S.A. § 2701(a)(1), 18 Pa. C.S.A. § 2902(a)(1), 18 Pa. C.S.A. § 3126(a)(3), 18 Pa. C.S.A. § 3123(a)(2), 18 Pa. C.S.A. § 3124.1, 18 Pa. C.S.A. § 3125(a)(1), respectively.

[the victim's] residence in Manheim Township to the streets of Lancaster City."

Trial Court Opinion, 5/4/18, at 1.

Initially, Appellant questioned whether the victim engaged in sexual contact with her heroin dealer. **See** Appellee's Brief, at 5. After the victim denied such contact, Appellant "proceeded to perform an examination … to make his own determination whether she had sexual contact or not." **Id.**

> The [Appellant] then brought the victim to the basement of the residence where he tied up her wrists and ankles to one another with a belt and a cable cord and then covered her with a sheet and continued to terrorize her and demand that she admit to having sexual contact with the heroin dealer. The [Appellant] then choked the victim and pinned her to the basement floor causing injuries to her arms, back and neck.
>
> After this lengthy assault, the [Appellant] has [sic] the victim drive her car, wearing only a bra and towel, to the drug dealers [sic] house in Lancaster City. At this point, a confrontation occurred between the [Appellant] and the drug dealer and a gunshot goes off from the drug dealers [sic] gun and this gave the victim an opportunity to get away from the situation. The victim ran up Queen Street in Lancaster City with the [Appellant] chasing her and once he caught up to her he continued to assault her by pulling her by her hair. A friend of the victim, Charlene Yurgaitis, was in the area, saw the assault, and came to the victim's aid by breaking up the victim and the [Appellant] and bringing the victim into a pizza shop to get away from the [Appellant].
>
> When the victim arrived at Lancaster General Hospital in the emergency department, she spoke to Officer Shane Long of the Manheim Township Police Department and relayed this information regarding the assault, both physical and sexual in nature. The victim repeatedly told the same version of events that happened as she told Ms. Yurgaitis, the emergency department staff, and Detectives Christopher Dissinger and Brent Schultz that afternoon in a recorded interview.

**Id.**, at 5-7 (citations omitted).

- 2 -

Appellant was represented at trial by appointed counsel. **See** Appellant's Brief, at 8. Appellant expressed concerns with his counsel, but after the trial court held a **Graizer** hearing, Appellant agreed to continue with counsel's representation. **See id.**, at 9.

However, shortly thereafter, Appellant requested three continuances: one seeking time to recover from an unrelated medical procedure, another attempting to obtain private counsel, and the third demanding a mental health evaluation. **See id.** The court denied all three requests. **See id.**

At the conclusion of the trial, Appellant was found guilty of seven offenses and not guilty of two offenses. **See id.** At sentencing, which occurred on March 9, 2018, Appellant received an aggregate sentence of ten and a half to twenty-seven years' confinement. **See** Appellee's Brief, at 4. Furthermore, Appellant was ordered to pay restitution in the amount of $2,312 and was concurrently informed of his registration requirements pursuant to Pennsylvania's Sex Offender Registration and Notification Act (SORNA). **See id.**; **see also** 42 Pa.C.S.A. §§ 9799.10-9799.41.

On March 19, 2018, Appellant, with new counsel, filed a timely post-sentence motion. The trial court denied Appellant's motion, and Appellant filed a timely notice of appeal on April 9, 2018. In response, the trial court directed Appellant to file a concise statement of errors

- 3 -

complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 27, 2018 Appellant timely complied with this directive. On May 4, 2018, the trial court issued its corresponding memorandum pursuant to Pa.R.A.P. 1925(a).

Appellant raises five questions for our review:

1. Was the verdict against the weight of the evidence with respect to all of [Appellant's] convictions?

2. Was the evidence insufficient to support a finding of threat by forcible compulsion?

3. Did the Trial Court abuse its discretion in denying [Appellant's] requested [sic] for a continuance to retain private counsel?

4. Did the Trial Court abuse its discretion in admitting the complainant's hearsay declarations under the excited utterance exception?

5. Did the Trial Court err in qualifying and allowing the Commonwealth to introduce the expert about the general characteristics and credibility of sexual abuse victims?

Appellant's Brief, at 5.

In his first issue, Appellant challenges the jury's guilty verdicts as being against the weight of the evidence. **See** Pa.R.Crim.P. 607. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Sullivan**, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). It is the trial court's "duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice." **Thompson v. City of Phila.**, 493 A.2d 669, 672 (Pa. 1985) (citations omitted).

- 4 -

However, "[t]he trial court will only award a new trial when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v. Rivera*, 983 A.2d 1211, 1255 (Pa. 2009) (citation omitted). In addition, "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 n.4 (Pa. Super. 2016) (citation omitted).

Our standard of review dictates that "we will reverse a trial court's refusal to award a new trial only when we find that the trial court abused its discretion in not concluding that the verdict was so contrary to the evidence as to shock one's sense of justice." *Olsen*, 82 A.3d at 1049.

> Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted) (internal quotation marks omitted). "We do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion."

*Commonwealth v. Ferguson*, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted). "In effect, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Olsen*, 82 A.3d at 1049. (internal quotation marks and citation omitted).

Appellant asserts that "the victim's recanted allegations made contemporaneous to the alleged assault are unsupported by the physical evidence recovered from the house." Appellant's Brief, at 14. To bolster this assertion, Appellant contends that "no blood evidence was recovered from the basement where [the] brutal beating allegedly took place." *Id.* In addition, Appellant avers that "[t]his lack of physical evidence is consistent with the victim's trial testimony that she and [Appellant] spoke in the basement prior to having consensual sexual intercourse, and she sustained the beating elsewhere at the hands of her two drug dealers." *Id.* Further, Appellant argues that any incriminating statements made to the police by the victim "were made while under the influence of drugs, or withdrawal, in a sleep-deprived state." *Id.*

Appellant further highlights the lack of forensic evidence supporting the Commonwealth's theory of the case. He asserts the absence of blood or other evidence of a violent beating in the basement renders the Commonwealth's narrative implausible. Appellant believes that under all these circumstances, the verdicts are "shocking to one's sense of justice." *Id.*, at 15.

Our Supreme Court has indicated that

> a conviction which rests solely on the prior inconsistent statements of witnesses who testify at trial, where such statements were properly admitted, but recanted at trial, does not offend due process provided the makers of such statements have been made available for cross examination, and, based on the content of the statements as a whole, a finder-of-fact could reasonably find that every element of the offense or offenses charged has been proven beyond a reasonable doubt.

***Commonwealth v. Brown***, 52 A.3d 1139, 1184 (Pa. 2012). In other words, there is no *per se* rule against using a recanting witness's prior inconsistent statements to establish the elements of a charged offense. ***See id.***

Here, the record reveals multiple witnesses testified that, among other things, the victim disclosed that she had been assaulted by Appellant. ***See, e.g.,*** N.T., 12/5/17, at 208-209 (Charlene Yurgaitis testifying that victim told Yurgaitis that Appellant had tied her up and raped her); ***see also*** N.T., 12/5/17, at 268-69 (Amy Dorer, R.N., testifying that victim disclosed she had been tied up with electrical cord and raped), 283 (sexual assault forensic examiner testifying that victim disclosed that she had been violently beaten and digitally penetrated against her will); N.T., 12/6/17, at 409 (police officer testifying that victim disclosed she had been raped). The testimony of the four individuals elicited at trial and the prior recorded statements made by the victim to detectives are all materially consistent with one another. Furthermore, the Commonwealth introduced evidence to demonstrate that Appellant and people affiliated with Appellant had made attempts to persuade the victim to recant her initial statements. ***See*** N.T., 12/7/17, at 469-76, 481-89.

Here, the trial court thoroughly reviewed the victim's testimony and prior inconsistent statements. *See* Trial Court Opinion, 3/28/18 at 4-10. After completing its review, the court concluded that the victim's prior statements were "not so patently unreliable as to render a jury verdict based upon them one of pure conjecture." *Id*., at 11.

Regarding the lack of blood or other physical evidence of violence in the basement, the court noted that the victim's injuries consisted primarily of extreme bruising. *See id*., at 16. Therefore, the court concluded the lack of blood or other forensic evidence in the basement did not necessarily impeach the narrative established by the victim's prior statements. As a result, the court concluded the verdict did not shock its conscience. We can find no abuse of discretion in this conclusion. As such, Appellant is due no relief for his weight of the evidence contention.

In his second issue, Appellant "challenges his judgement of sentence for indecent assault, aggravated indecent assault, and IDSI as the Commonwealth failed to establish forcible compulsion." Appellant's Brief, at 15. Stated differently, Appellant challenges whether the evidence was sufficient to sustain a finding that he forcibly coerced the victim during the sexual assaults.

"In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict

winner, are sufficient to support all elements of the offense [beyond a reasonable doubt]." *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citation omitted). "Additionally, we may not reweigh the evidence or substitute our judgement for that of the fact finder." *Id.* (citation omitted). "The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt." *Id.* (citation omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Smith*, 863 A.2d 1172, 1176 (Pa. Super. 2004) (citation omitted).

Appellant claims that there was not enough evidence presented at trial to demonstrate that Appellant engaged in forcible compulsion, which constituted an element of his indecent assault, aggravated indecent assault, and IDSI convictions. Forcible compulsion is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychosocial force, either express or implied." 18 Pa.C.S.A. § 3103. We have interpreted the statutory definition of forcible compulsion to include "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (citation omitted). However, "[e]ffective consent to sexual intercourse will negate a finding of forcible

compulsion." ***Commonwealth v. Rhodes***, 510 A.2d 1217, 1225 (Pa. 1986) (citations omitted).

Appellant avers that the evidence at trial, even when viewed in the light most favorable to the Commonwealth, "failed to establish [that Appellant] and [the victim] engaged in intercourse, or other indecent contact, by forcible compulsion or by threat of forcible compulsion." Appellant's Brief, at 19. Appellant bolsters this proposition by citing to the record where the victim identified that all of the sexual acts between Appellant and the victim were consensual. ***See*** N.T., 12/7/17, at 545-48. Furthermore, Appellant points to the alleged lack of incriminating physical evidence recovered from the victim's home. ***See*** Appellant's Brief, at 19. As such, Appellant concludes that "the evidence at trial cannot support the inferences that [Appellant] exerted physical or other force over [the victim], as the physical evidence belies [the victim's] previous allegations that [Appellant beat her within her home prior to raping her." ***Id.***

As gleaned from the testimony, both a registered nurse and a sexual assault forensic examiner ("SAFE") nurse reported on the victim's condition and the statements that the victim made at the hospital to them. ***See*** N.T.. 12/5/17, at 268-93. The victim "had abrasions and bruises all to her face, her chin. She had a large bruised area underneath her chin. She had what appeared to be ligature marks around her wrists and around her ankles and just multiple abrasions on all four extremities and her back." ***Id.***, at 268.

In addition to having indicated that she was "hit in the face, kicked, and that someone stood on her neck," the victim relayed to the registered nurse "that the person who assaulted her had taken an electrical cord and tied her hands" and had also "tied her ankles to each other and then tied her hands to her feet." *Id.*, at 269. The victim said that she "had sex with … the person who was [assaulting her] in order to get that person to stop." *Id.*

The SAFE nurse corroborated what the registered nurse had testified to, both in terms of what the victim disclosed to both of these two medical professionals, but also the victim's physical appearance. The SAFE nurse stated that the victim "had bruises everywhere." *Id.*, at 282. The SAFE nurse also stated that the victim specified that "she had been held hostage and that she had been tied up [downstairs]." *Id.*, at 283.

Although disavowed by her own testimony at trial, the victim went into great detail with detectives, wherein she stated, among other things, that Appellant "started tying [her] up with … cords, that he tied [her] ankles up and that he tied [her] feet up." N.T., 12/7/17, at 596. The victim's recanted statement also indicated that the Appellant put a sheet around her neck, choked her, and struck her in the head with his fist. *See id.*, at 595-96. The victim's declaration to those detectives was consistent with the testimony and observations of the registered nurse and SAFE nurse.

In addition, there was an ample amount of consistency between the testimonies and observations of the responding officers, Yurgaitis, and the

- 11 -

victim's statement to detectives. ***See, e.g.***, N.T., 12/6/17, at 405-06. The Commonwealth also presented abundant physical evidence of the various bruises and lacerations that the victim sustained. Moreover the Appellant, while denying he raped the victim, corroborated a large amount of the witness testimony when he admitted to having: 1) taken the victim to the victim's basement; 2) tied her arms and legs together; 3) placed a sheet over her head; 4) pinned her down; 5) conducted his own sexual examination of the victim; 6) and engaged in (allegedly consensual) sex with the victim while she was tied up. ***See*** Commonwealth's Ex. 7.

When viewing all of the evidence that was presented at trial in the light most favorable to the Commonwealth, the record is sufficient to sustain a finding that Appellant "used either physical force, a threat of physical force, or psychological coercion," ***Eckrote***, 12 A.3d at 387, on the victim. Further, the evidence was sufficient to support a finding that the victim did not consent. As such, no relief is due on this issue.

In his third issue, Appellant complains that the trial court abused its discretion by denying his request for a continuance to obtain private counsel. Appellant believes this abuse of discretion occurred when "[t]he trial court gave [Appellant] the ultimatum of proceeding with current counsel, proceeding *pro se*, or proceeding *in absentia*." ***See*** Appellant's Brief, at 20.

Appellant contends that he voiced his dissatisfaction with his court-appointed counsel and made it clear to the trial court that he wanted a

continuance in order for him to obtain private counsel. *See id.*, at 21. Appellant also asserts that the trial court did not conduct an inquiry into why he wanted to obtain private counsel and that there was a clear breakdown in communication between Appellant and his appointed counsel. *See id.*, at 22. Appellant had only obtained one prior continuance. *See id.*, at 22-23.

"It is well settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court." ***Commonwealth v. Prysock***, 972 A.2d 539, 541 (Pa. Super. 2009) (citation omitted). "A trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion." ***Id.*** (citation omitted).

> We have generally found that a trial court did not abuse its discretion in denying a request for a continuance to retain new counsel where the trial court conducted an "extensive inquiry" into the underlying causes of defendant's dissatisfaction with current counsel and based upon that inquiry determined that the differences did not constitute "irreconcilable differences."
>
> We have also looked to the number of prior continuances in the matter, the timing of the motion, whether private counsel had actually been retained, and the readiness of private counsel to proceed in a reasonable amount of time.

***Id.***, at 543 (citations omitted).

Here, Appellant requested a continuance so that he could obtain new counsel. "An accused has the constitutional right to counsel." ***Commonwealth v. Brown***, 145 A.3d 196, 204 n.16 (Pa. Super. 2016). "The right to choose his or her own counsel, however, must be weighed against, and may reasonably be restricted by, the state's interest in the swift and

efficient administration of criminal justice." *Id.* (citation omitted). "The right to counsel does not give a defendant the right to delay the trial indefinitely because he is dissatisfied with competent counsel appointed by the court, ready and willing to represent him." *Commonwealth v. Neal*, 563 A.2d 1236 (Pa. Super. 1989) (citation and internal quotation marks omitted) (brackets omitted).

It is uncontroverted that the Appellant initially expressed concerns with his appointed counsel in a correspondence addressed to the trial court, which was dated November 23, 2017. *See* Trial Court Opinion, 5/4/18, at 14. Six days later, with the trial being scheduled only a week away, the court held a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), whereupon Appellant ultimately concluded that he wanted his appointed counsel to continue representing him.

Concurrent with his hearing, Appellant sought a continuance "for scheduled medical procedures," that were apparently set to take place on the week of trial. Trial Court Opinion, 5/4/18, at 15. The trial court denied this request, and Appellant acknowledged that the medical procedures would need to be rescheduled. *See id.*

On December 4, 2017, at the start of jury selection in this trial, Appellant orally asked for a new continuance. *See id.* In denying this motion, the trial court informed Appellant that he could proceed with his appointed counsel or proceed *pro se*. *See id.*, at 16.

Under these circumstances, we cannot conclude the trial court abused its discretion. Appellant was given a full hearing, which ultimately concluded with Appellant agreeing to proceed with appointed counsel. Appellant's request for a continuance on the eve of trial would have delayed the resolution of this case for indeterminate period of time. The court adequately balanced these concerns and found that Appellant's right to change counsel at the last second was outweighed by the interests of prompt justice. **See Commonwealth v. McAleer**, 748 A.2d 670, 674 ("While defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.") (internal quotation marks omitted). Accordingly, this issue is without merit.

Next, Appellant maintains that Yurgaitis's testimony about what the victim told her happened was inadmissible hearsay. **See** Appellant's Brief, at 23. The trial court held that Yurgaitis's statements fell under the auspice of the excited utterance exception to the hearsay rule.

"The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. McFadden**, 156 A.3d 299, 309 (Pa. Super. 2017) (citation omitted). While generally all relevant is admissible, **see** Pa.R.E. 402, evidence predicated on hearsay is not. Hearsay is an out-of-court statement "a party offers in evidence to prove

- 15 -

the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is not admissible unless there is a statutory or rules-based exception to the hearsay rule. *See* Pa.R.E. 802.

An "excited utterance," which is an exception to the hearsay rule, is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). The excited utterance:

> (1) need not describe or explain the startling event or condition; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

*Id.*, cmt.

"There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance." *Id.* As such, "each case must be judged on its own facts. . . . The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Commonwealth v. Gore*, 396 A.2d 1303, 1305 (Pa. Super. 1978) (citations omitted). Guiding our decision on whether a statement is an excited utterance is consideration of "whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so."

*Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa. Super. 2002) (citation omitted).

It is undisputed that Yurgaitis testified she encountered the victim while Appellant was chasing the victim down the street. The victim "had blood on her face, on her thighs[,] her arms," and had clear ligature marks on her wrist. N.T., 12/5/17, at 208. The victim was "emotionally upset." *Id*.

The victim told Yurgaitis that Appellant had tried to kill her. *See id*. Further, she stated that Appellant tied her up in her basement, and raped and beat her. *See id*., at 209. After calling 911, Yurgaitis left the victim at a pizza shop and walked to her friend's nearby home. *See id*., at 212.

Approximately fifteen minutes later, the victim appeared at Yurgaitis's friend's house unexpectedly. *See id*., at 213. The victim was calm and borrowed clean clothes to wear. *See id*., at 214.

Appellant argues Yurgaitis's testimony that the victim stated Appellant was going to kill her and that Appellant had raped her were not uttered while the victim was excited. He claims these statements occurred while Yurgaitis and the victim were at Yurgaitis's friend's house. He highlights Yurgaitis's testimony that the victim was calm at the friend's house.

However, as shown above, Yurgaitis testified that the victim made the at-issue statements shortly after Yurgaitis intervened and *before* reaching Yurgaitis's friend's house. Yurgaitis testified that at the time the victim made

these statements, the victim was emotional and upset. Since Appellant's argument is contrary to the evidence of record, he is due no relief.

In Appellant's final issue, he suggests that the trial court "abused its discretion in allowing Lisa Cameron to testify about the general behaviors of [sexual] abuse victims despite no physical evidence that [the victim] was sexually abused." Appellant's Brief, at 27 (capitalization altered). At trial, Cameron was qualified as an expert in the field of victim behavior for victims of sexual violence and abuse. Cameron holds a master's degree in counseling, is a licensed professional counselor and certified trauma practitioner, and is specialized in the field in which she testified. *See* N.T., 12/6/17, at 363-64.

Appellant contends that Cameron's opinions were "inapplicable to the instant case and were baseless." Appellant's Brief, at 27. He proceeds to assert that "Cameron has no empirical basis to support her conclusion that any of the thousands of alleged sexual assault victims that she's counseled over the years are the victims of sexual assault." *Id.*, at 29.

Moreover, Appellant avers that Ms. Cameron "testified to her opinion regarding a wide-range of potential behaviors a victim of sexual abuse may exhibit, although many of these behaviors conflicted with one another." *Id.* Appellant further argues that since the victim was under the influence of heroin throughout the underlying incident, Cameron's testimony was not relevant to whether she acted as a victim of sexual abuse. *See id.* As such, Appellant argues Cameron should not have been qualified as an expert.

Our standard of review for a challenge to a court's decision to admit expert testimony is as follows:

> The admission of expert testimony is a matter of discretion [for] the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion. Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not admissible where the issues involves a matter of common knowledge.

*Commonwealth v. Carter*, 111 A.3d 1221, 1222 (Pa. Super. 2015) (citations and internal quotation marks omitted). While expert witnesses are precluded from testifying about the credibility of a sexual abuse victim, experts in this field may testify as to "specific types of victim responses and behaviors." 42 Pa.C.S.A. § 5920(b)(2). A witness may be qualified as an expert if he or she "will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted." *Id.* at § 5920(b)(1).

In overruling Appellant's objection, the trial court ruled that Cameron's "testimony involved an area that would be beyond the normal understanding of the general public, especially because the legislature has specifically permitted this type of testimony." Trial Court Opinion, 5/4/18, at 23. Cameron's testimony was consistent with her expert report, and she had "recently been qualified as an expert in three criminal cases." *Id.*, at 23-25. Moreover, Ms. Cameron has counseled thousands of victims of sexual abuse. *See* N.T., 12/6/17, at 366.

- 19 -

Under these circumstances, we cannot conclude the court abused its discretion in admitting Cameron's testimony. First, Cameron testified that she was not familiar with the facts of this case and did not opine on anything that could be construed as affecting credibility determinations. *See id.*, at 369. Rather, Cameron was "prepared and qualified to talk about general responses as it relates to sexual violence and the trauma that victim/survivors experience." *Id.*, at 373. Cameron conceded that it was the jury's prerogative to interpret her testimony as best it saw fit. *See id.*

Second, given her professional experiences and education, Cameron undoubtedly "has specialized knowledge beyond that possessed by the average layperson." 42 Pa.C.S.A. § 5920(b)(1). Appellant asserts that "Cameron had no empirical basis to support her conclusion that any of the thousands of alleged sexual assault victims that she's counseled over the years are the victims of sexual assault." Appellant's Brief, at 29. However, under § 5920, an expert witness needs only to have specialized knowledge that is derived from her training or education in sexual violence issues. *See* 42 Pa.C.S.A. § 5920(b)(1).

Clearly, Ms. Cameron meets this requirement given her background and experiences, and she testified to the same. Her exposition on, among other topics, victim reactions to trauma, abuser reactions to trauma, coping mechanisms, and the reporting of abuse was not only relevant, but it also served to assist the trier of fact in understanding the dynamics of sexual

violence. *See id*., at 5920(a)(1). Appellant's arguments address the weight to be given to Cameron's testimony, not the admissibility of her testimony. Consequently, we discern no abuse of discretion in the trial court admitting Ms. Cameron as an expert witness nor in admitting her opinion testimony. Therefore, Appellant is due no relief as to this issue.

In summation, as we find none of Appellant's issues meritorious, no relief is due, and we therefore affirm the trial court's order.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019