**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph P. CARMODY, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 15, 2002.

Filed May 15, 2002.

Martricia McLaughlin, Assistant District Attorney, Easton, for Com., appellant.

Gary N. Asteak, Easton, for appellee.

BEFORE: HUDOCK, KLEIN and BECK, JJ.

BECK, J.:

¶ 1 In this Commonwealth appeal the question we examine is whether a witness's signed and adopted statement may be admitted as substantive evidence at a preliminary hearing despite the witness's claim that the statement is unreliable because she was intoxicated at the time she gave it. We conclude that under the facts of this case the statement was admissible and so reverse the ruling of the habeas court.

¶ 2 Joseph Carmody was arrested after his girlfriend, Maryann Torres, called police to report that Carmody had assaulted her. Torres arrived at the Moore Township police station at approximately 2:00 AM on February 3, 2001 and reported to Officer Gary West that Carmody had just assaulted her in her home. Officer West observed physical evidence of the attack, including the victim's swollen and red eyes and scratch marks on her neck. Police were dispatched to Torres's home to apprehend Carmody and Torres was asked to make a written statement of events.

¶ 3 When Carmody arrived at the police station, he asserted that Torres should be arrested for driving to the station while under the influence of alcohol. Officer West, in response to Carmody's claims, subjected Torres to a preliminary breath test, but concluded that an arrest for DUI was unwarranted.

¶ 4 Torres's written statement described the assault in detail. In it, Torres explained that Carmody repeatedly hit her and also threatened to kill her while holding a knife to her throat. Torres also described her actions in fleeing from the residence. Carmody was arrested on charges of aggravated assault, simple assault, harassment and terroristic threats. He appeared before a district justice in Northampton County for a preliminary hearing on March 15, 2001.

¶ 5 At the preliminary hearing, the Commonwealth called Torres to testify as the victim in the case. She denied that Carmody hit her on the night in question and further explained that she had sent a letter to the district justice asking that the case against Carmody be dismissed. Torres also stated that she attempted to contact police in an effort to drop the charges against her boyfriend. According to Torres, she had been drinking on the night of the incident and had a "blackout." As a result, she could not remember anything that happened on that night. Further, she claimed that nothing she said or wrote on that date was reliable.

¶ 6 Officer West told the district justice that Torres came into the station and informed him that Carmody had punched her in the face, head and neck and had held a kitchen knife to her throat. West then instructed Torres to write down exactly what happened. The statement Torres wrote revealed that Carmody threatened her while holding the knife to her neck, but Torres ultimately escaped and contacted police. Officer West confirmed

that once brought into custody, Carmody accused Torres of drunk driving, prompting West to administer the breath test. West testified that although he noticed an odor of alcohol on Torres's breath, she spoke coherently and did not appear intoxicated at all. As a result, he filed no charges against her.

¶ 7 At the preliminary hearing Torres also appeared as a witness on Carmody's behalf. She explained that she did not want to prosecute him, that she did not believe he harmed her that night, and that her verbal and written statements to the contrary were unreliable due to an alcohol-induced blackout she experienced.[1]

¶ 8 Despite Torres's testimony, Carmody was bound over for trial on the charges of simple assault, harassment and terroristic threats. The district justice ruled that the Commonwealth had not established a prima facie case on the charges of aggravated assault and criminal mischief and so dismissed those charges.

■ ¶ 9 After the preliminary hearing, Carmody filed with the trial court an Application to Dismiss–Habeas Corpus. He alleged that the preliminary hearing evidence offered to support the charges consisted solely of inadmissible hearsay and, as such, was insufficient to support a prima facie case. The Commonwealth responded by asserting that there was other evidence to support the charges and, further, that Torres's statements either fell within an exception to the hearsay rule, as excited utterances, or were admissible as prior inconsistent statements.[2]

¶ 10 The habeas court, after reviewing the entire record, determined that the Commonwealth had established a prima facie case with respect to simple assault and harassment based on the officer's observations of the victim, coupled with the excited utterances she communicated verbally to the officer. However, the habeas court held that the written statement was not admissible as either an excited utterance or a prior inconsistent statement and, since the written statement was the only evidence to support the terroristic threats charge, Carmody was entitled to dismissal of that charge.

¶ 11 The Commonwealth filed a timely appeal asserting that the habeas court erred in dismissing the charge of terroristic threats. The matter is now before us on appeal.

■ ¶ 12 Where a criminal defendant seeks to challenge the sufficiency of evidence presented at his preliminary hearing, he may do so by filing a writ of habeas corpus with the court of common pleas. *Commonwealth v. McBride*, 528 Pa. 153, 595 A.2d 589, 590 n. 2 (1995). *See also Commonwealth v. Saunders*, 456 Pa.Super. 741, 691 A.2d 946 (proper means for challenging pretrial finding that Commonwealth has made out a prima facie case is petition for writ of habeas corpus), *appeal denied*, 550 Pa. 703, 705 A.2d 1307 (1997). In such instances, the habeas court acts in the capacity of a reviewing court to assess whether a prima facie case was presented at the preliminary hearing, that is, wheth-

---

1. Torres did not claim the statements were not made, only that they were unreliable on account of her intoxication.

2. Typically, hearsay evidence is admissible at a preliminary hearing and the Commonwealth may offer it to meet its burden of establishing a prima facie case, *i.e.*, proof that a crime has been committed and the accused

is probably the one who committed it. *Commonwealth v. Tyler*, 402 Pa.Super. 429, 587 A.2d 326, 328–29 (1991). However, if the hearsay testimony offered at the preliminary hearing is the *only* basis for establishing a prima facie case, it fails to meet the criteria for evidence upon which the preliminary hearing judge may rely. *Id.* at 328.

er sufficient evidence exists to require the defendant to be brought to trial. *Commonwealth v. Scott*, 396 Pa.Super. 339, 578 A.2d 933, 936–37 (1990), *appeal denied*, 528 Pa. 629, 598 A.2d 283 (1991).

¶ 13 The error Carmody alleged in his habeas petition was the fact that the preliminary hearing court relied solely on hearsay evidence. The habeas court held Carmody on the charge of simple assault and harassment, but dismissed the charge of terroristic threats. In this appeal, the Commonwealth is challenging the dismissal of terroristic threats. The single question then is whether Torres's written statement, upon which the terroristic threats charge is based, was admissible and if so, under what theory.

¶ 14 The Commonwealth argues first that the written statement, like Torres's initial statements to Officer West when she arrived at the police station, falls within the excited utterance exception to the hearsay rule. P.R.E. 803(2). The habeas court rejected that claim, relying on the well-established definition of an excited utterance and its application to these facts.

> [An excited utterance is a] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its being emanated in whole or in part from his reflective faculties.

*Commonwealth v. Upshur*, 764 A.2d 69, 75 (Pa.Super.2000) (citations omitted).

¶ 15 In assessing a statement offered as an excited utterance, the court must consider, among other things, wheth-er the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so. *Commonwealth v. Sanford*, 397 Pa.Super. 581, 580 A.2d 784, 788 (1990), *appeal denied*, 527 Pa. 586, 588 A.2d 508 (1991). The habeas court correctly noted that there is no bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement. "[T]he crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302, 1305 (1975). It is "the spontaneity of . . . an excited utterance [that] is the source of reliability and the touchstone of admissibility." *Commonwealth v. Chamberlain*, 557 Pa. 34, 40, 731 A.2d 593, 596 (1999) (citations omitted).

¶ 16 We agree with the habeas court that Torres's written statement does not qualify as an excited utterance as it was not "a spontaneous declaration made before the emotional shock and spontaneity of the assault had dissipated." Habeas Court Opinion, 6/22/01, at 8. Officer West testified that the victim appeared at the police station and verbally related to him the events from which she had just fled. He noticed her swollen eyes, as well as marks on her neck. After Torres relayed the information, Officer West apparently arranged for Carmody's arrest and "had her [Torres] go into a back room at the police station" where he sat down with her and "asked her write down exactly what had happened that night." Preliminary Hearing Transcript, 3/15/01, at 14–15. The statement is in narrative form, all of it written by Torres and signed by her.

¶ 17 Unlike Torres's verbal statements to Officer West upon her arrival at the station, the written statement was given subsequent to several intervening events. It was given after Torres's initial verbal explanation and accomplished only once she was taken to another room and asked to tell the details of her story in written form. These facts militate against a finding of spontaneity. The Pennsylvania Supreme Court has described an excited utterance as "the event speaking and not the speaker." *Commonwealth v. Zukauskas,* 501 Pa. 500, 503, 462 A.2d 236, 237 (1983). Under these facts, we find the form of the statement, coupled with the circumstances under which it was given, preclude it from being admissible as an excited utterance.

¶ 18 While we agree with the habeas court that the written statement was not an excited utterance, we disagree with the court's conclusion that the statement was not admissible in any event. Separate from the issue of whether the written statement fell within the excited utterance exception to the hearsay exception is the question of whether it was nonetheless admissible as a prior inconsistent statement.

¶ 19 Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66, 68 (1986); P.R.E. 613(a). Further, a prior inconsistent statement may be offered not only to impeach a witness,

but also as substantive evidence if it meets additional requirements of reliability. *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7, 9–10 (1992); P.R.E. 803.1. The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. *Commonwealth v. Brewington,* 740 A.2d 247, 254 (Pa.Super.1999), *appeal denied,* 563 Pa. 626, 758 A.2d 660 (2000). With respect to the first prong, that the statement is given under reliable circumstances, our supreme court has deemed reliable only certain statements; among them is a statement that is "reduced to a writing and signed and adopted by the witness." *Lively, supra,* at 479, 610 A.2d at 10. *See also* P.R.E. 803.1(1). With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test. *Commonwealth v. Romero,* 555 Pa. 4, 722 A.2d 1014, 1017 (1999), *cert. denied,* 528 U.S. 952, 120 S.Ct. 376, 145 L.Ed.2d 293 (1999).[3]

¶ 20 Here, the habeas court found that although Torres's statement was reduced to writing and then signed and adopted by her at the time she gave it, the cross-examination requirement was not satisfied. This was so, reasoned the court, because Torres had a blackout. The court concluded that Torres's blackout precluded any meaningful opportunity to cross-examine her on the veracity of her written statement. The court also noted two letters introduced by Carmody that indicated Torres's "desire not to testify at the trial and

---

3. In *Romero,* our supreme court held that the cross-examination prong was not satisfied because the witness in that case, Barbosa, refused to answer any questions about his prior statement and was held in contempt of court as a result. The *Romero* court found Barbosa's refusal to explain the statement foreclos-

ed the defendant's right to confront witnesses against him. Here, on the other hand, Torres testified about her prior statement, attempting to explain why it was not reliable. Carmody was not denied his confrontation rights; Torres voluntarily testified on his behalf.

reiterating her inability due to alcohol consumption to independently recollect the events which took place the night of the alleged incident." Habeas Court Opinion, 6/22/01, at 10.

¶ 21 We cannot agree that there was no opportunity to cross-examine Torres on her prior statement. Both Carmody and the Commonwealth were permitted to question Torres as to why she said one thing on the night she fled from Carmody and something entirely different at the preliminary hearing. Those inquiries constituted classic cross-examination regarding prior statements. The *substance* of Torres's answers does not dictate *whether she was subject* to cross-examination. The question is whether she testified about the prior statement, not what she responded when she testified.

■ ¶ 22 The habeas court, by accepting Torres's claim that the statement was written during a blackout, essentially ruled on Torres's credibility as a witness, an assessment not permitted in the context of determining a prima facie case. *See Liciaga v. Court of Common Pleas of Lehigh County*, 523 Pa. 258, 566 A.2d 246, 248 (1989) (preliminary hearing magistrate not empowered to make credibility determination); *See also Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa.Super.2001) (Commonwealth establishes prima facie case when it produces evidence that, *if accepted as true*, would warrant the trial judge to allow the case to go to a jury; weight and credibility are not factors).[4] Thus, the habeas court erred in accepting the veracity of Torres's preliminary hearing testimony rather than simply determining if she had in fact been subject to cross-examination.

¶ 23 At the preliminary hearing Torres properly was questioned on her prior written statement, which was inconsistent with her current testimony. The dictates of *Lively* were satisfied and her written statement was admissible as substantive evidence. Further, because the written statement established a prima facie case of terroristic threats, the habeas court erred in dismissing that charge for lack of evidence. For the reasons set forth above, we vacate that part of the habeas court's order that dismissed the charge of terroristic threats and direct that the charge be reinstated. Carmody shall face trial on all of the charges for which he was bound over for trial at his preliminary hearing.

¶ 24 Order reversed in part and matter remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

4. The letters Torres wrote to the district justice and the prosecutor do little to settle the controversy. In one of the letters, Torres alternates between insisting that she was in an emotional shock from falling against a dining room chair to suggesting that perhaps she was just mad at Mr. Carmody and wanted to see him go through hardship.