J-S44043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVANS ALEXANDER WYNN-TURNER | : | |
| | : | |
| Appellant | : | No. 622 MDA 2020 |

Appeal from the PCRA Order Entered March 24, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004144-2015

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED NOVEMBER 17, 2020**

Evans Alexander Wynn-Turner (Appellant) appeals, *pro se*, from the order entered March 24, 2020, in the York County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act[1] (PCRA), seeking relief from his jury conviction of one count of persons not to possess firearms.[2]  Appellant raises several claims concerning the ineffective assistance of trial counsel.  For the reasons below, we affirm.

The relevant facts and procedural history were recounted by this Court in the memorandum decision affirming Appellant's judgment of sentence on direct appeal:

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 6105(a)(1).

The record reveals that at approximately 11:00 p.m., on April 27, 2015, York Police Officers responded to a 911 call concerning a man with a weapon at 319 East King Street. When officers arrived at the residence, they were permitted entry and spoke to Ms. Lakiesha Liggins. Ms. Liggins provided a written statement informing the officers that she called the police because she had ended her relationship with Appellant, and when she told him that he needed to vacate the premises, Appellant brandished a gun and threatened to kill her.[2] Police then searched the home. Officer Paul Thorne testified that when he looked out of a window on the third floor, he saw a lunch box on the roof of a neighboring house. Officer Thorne requested a ladder from the fire department, and with the ladder in place, he climbed to the roof and retrieved the lunch box. Inside the lunch box, Officer Thorne discovered a loaded handgun. Ms. Liggins testified at [a] *habeas corpus* hearing that the lunch box belonged to her son and the gun found inside was the gun that was kept at her house.

_____

[2] It does not appear that this written statement was ever admitted into evidence. Rather, Ms. Liggins's April 27, 2015 statement was used for impeachment purposes as a prior inconsistent statement, and Ms. Liggins testified that she had written the statement and signed it.

_____

Officer Matthew Tunnal testified that he located Appellant on the third floor of the house. Appellant was calm until Officer Sean Haggarty informed him that the firearm had been recovered. Appellant then began sweating profusely. The officers arrested Appellant and charged him with receiving stolen property, simple assault, terroristic threats, and persons not to possess firearms.[3]

_____

[3] 18 Pa.C.S. § 3925(a), 18 Pa.C.S. § 2701(a)(3), 18 Pa.C.S. § 2706(a)(1), and 18 Pa.C.S. § 6105(a)(1), respectively.

_____

Despite the 911 call and the written statement she gave to police, Ms. Liggins later disavowed her claim that Appellant brandished a firearm, and at trial, Ms. Liggins refused to testify. In light of Ms. Liggins's recantation, the Commonwealth sought to have her testimony from Appellant's preliminary hearing and *habeas corpus* hearing admitted under Pa.R.E. 804(a)(2).

- 2 -

Appellant did not object to the admissibility of Ms. Liggins's prior testimony.[4] However, Appellant did object to the Commonwealth having Ms. Liggins's written statement to police and the recording of her 911 call admitted into evidence. The Commonwealth sought to use Ms. Liggins's written statement and 911 call as evidence that Appellant possessed the gun that was later discovered on the neighbor's roof.

_____

[4] A declarant is considered unavailable as a witness if the declarant refuses to testify about the subject matter despite a court order to do so. Pa.R.E. 804(a)(2). When the declarant is unavailable, the declarant's prior testimony is admissible where it is offered against a party who had a "full and fair" opportunity to examine the witness. Pa.R.E. 804(b)(1) and comment thereto (citing **Commonwealth v. Bazemore**, 614 A.2d 684 (Pa. 1992)).

_____

After consideration, the trial court concluded that the written statement could be used for impeachment purposes as a prior inconsistent statement and the 911 call was admitted as an excited utterance under Pa.R.E. 803(2).

Despite Ms. Liggins's refusal to testify at trial and recantation of her statement that Appellant had pointed a gun at her, the record reveals that she did admit calling 911 on the night in question. Additionally, Ms. Liggins testified previously that Appellant had a gun,[3] threatened to kill her, and that the gun the police retrieved was the gun that was kept at her house. However, Ms. Liggins stated that the gun belonged to a former paramour, and she emphasized that the gun was not discovered inside her house.

On March 22, 2017, a jury found Appellant guilty of persons not to possess firearms and acquitted him of the remaining

_____

[3] We note this appears to be a misstatement by the prior panel as Liggins never **testified** that Appellant had a gun on the night in question. Rather, at both the preliminary hearing and *habeas* hearing, Liggins testified that Appellant did **not** threaten her with a gun. **See** N.T. Preliminary H'rg, 6/29/15, at 7; N.T. *Habeas* H'rg, 2/29/16, at 18. However, at both hearings, she also conceded that she had stated he did threaten her with a gun in both her 911 call and statement to police on the night of the incident. **See** N.T., Preliminary H'rg, at 9-10; N.T., *Habeas* H'rg, at 8, 15-16.

charges. On May 3, 2017, the trial court sentenced Appellant to a term of four to eight years of incarceration.

*Commonwealth v. Wynn-Turner*, No. 1410 MDA 2017 (unpub. memo. at 1-5) (record citations omitted).

Appellant was represented at trial and sentencing by Assistant Public Defender Kathryn Bellfy, Esquire. At the sentencing hearing, Attorney Bellfy informed the court that Appellant wished to proceed *pro se* post-sentencing. N.T. Sentencing H'rg, 5/3/17, at 3. Thus, at the end of the hearing, the trial court conducted a *Grazier*[4] colloquy and determined that Appellant "knowingly, voluntarily, and intelligently decided to represent himself from [that] point forward[.]" *Id.* at 15. The trial court appointed Attorney Bellfy as standby counsel. *Id.* at 15-16. Appellant filed a *pro se* post-sentence motion later that same day, followed by an amended post-sentence motion on May 22, 2017. The trial court denied relief on August 31, 2017, and this Court subsequently affirmed Appellant's judgment of sentence on direct appeal on May 1, 2018.[5] *See Wynn-Turner*, 1410 MDA 2017.[6]

On November 16, 2018, Appellant, acting *pro se*, filed both a Memorandum of Law and Supplemental Brief, which the court considered,

---

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[5] We note Appellant proceeded on direct appeal *pro se*, after the trial court conducted a *Grazier* hearing, and determined Appellant knowingly and voluntarily waived his right to counsel.

[6] Although Appellant initially filed a petition for allowance of appeal in the Pennsylvania Supreme Court, he later discontinued that request. *See* 360 MAL 2018.

- 4 -

collectively, to be Appellant's first, timely PCRA petition. In both filings, Appellant raised claims challenging the ineffective assistance of trial counsel. *See* Appellant's Memorandum of Law Supporting Post-Conviction Collateral Relief under the Pennsylvania Post Conviction Relief Act, 11/16/18, at 12-29; Appellant's Supplemental Brief in Support of Petition for Post Conviction Relief, 11/16/18, at 1-17. The PCRA court initially appointed counsel to assist Appellant; however, Appellant later requested to proceed *pro se*, and following another ***Grazier*** hearing, the court granted his request. *See* Order, 4/29/19.

On February 10, 2020, the PCRA court notified Appellant of its intent to dismiss his petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907. *See* Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907, 2/10/20. Although Appellant filed a timely, *pro se* response, the PCRA court entered an order denying Appellant's petition on March 24, 2020. This timely appeal follows.[7]

Appellant raises the following claims on appeal:

[1] Whether Attorney [ ] Bellfy provided ineffective assistance of counsel at trial for failing to request Pennsylvania Suggested Standard Jury Instruction 4.08(A) (criminal) to limit the jury's use of a prior inconsistent statement contained within the prior recorded testimony from the habeas corpus hearting held February 29, 2016[?]

[2] Whether Attorney [ ] Bellfy provided ineffective assistance of counsel at trial for failing to make a standard hearsay objection to

---

[7] Appellant complied with the PCRA court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

inadmissible hearsay contained within Lakeisha Liggins['s] preliminary hearing testimony held June 29, 2015[?]

[3] Whether Attorney [ ] Bellfy provided ineffective assistance of counsel at trial for failing to utilize the written affidavit of Lakiesha Marie Liggins which was an exculpatory document material to the case against [Appellant] and would have had an obvious impact on the credibility of the Commonwealth's key witness[?]

[4] Whether Attorney [ ] Bellfy provided ineffective assistance of counsel at trial for not objecting to improper arguments made by the Commonwealth's attorney during opening statements and closing arguments[?]

[5] Whether Attorney [ ] Bellfy provided ineffective assistance of counsel at trial for failing to request redaction of a racial slur in Commonwealth Exhibit Number 2[?]

[6] Whether the cumulative impact of each of the individual claims of Attorney [ ] Bellfy's ineffectiveness, considered collectively, resulted in such prejudice to Appellant that a new trial should be awarded[?]

Appellant's Brief at 4-5.

Our review of an order denying a PCRA petition is well-settled: "[W]e must determine whether the PCRA court's order 'is supported by the record and free of legal error.'" ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted). Moreover,

"[A] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing."

*Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa. Super. 2015) (citations omitted).

Where, as here, a petitioner's claims raise allegations of prior counsel's ineffectiveness,

> the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. . . . Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption.

*Johnson*, 139 A.3d at 1272 (citations omitted). Furthermore, it is well-established that "[a] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Miller*, 231 A.3d 981, 991 (Pa. Super. 2020) (citations omitted).

In his first issue, Appellant insists Attorney Bellfy provided ineffective assistance when she failed to request a jury instruction limiting the jury's consideration of Liggins's prior inconsistent statement to impeachment purposes only. Appellant's Brief at 9. *See* Pa. SSJI (Crim) § 4.08A(2) [Second Alternative] ("You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.").

By way of background, we reiterate that during her 911 call to police on the night of the incident, Liggins stated Appellant threatened her with a gun.[8]

---

[8] The 911 call was played for the jury during Appellant's trial. *See* N.T., 3/20/17, at 94-95. On direct appeal, this Court concluded the trial court did

- 7 -

N.T., 3/21/17, at 64-65, 86. That same night, Liggins signed a written statement for the police in which she claimed that during an argument, Appellant "pulled out a gun, and said, you better send me to jail soon because I feel like killing you." N.T., *Habeas* H'rg, at 15. Although the written statement was not introduced into evidence, it was read verbatim during Appellant's *habeas* hearing. **See id.** At both Appellant's preliminary hearing, held on June 29, 2015, and *habeas* hearing, held on February 29, 2016, Liggins contradicted her prior statements, and testified that Appellant did **not** possess a firearm at any time during their argument. **See** N.T., Preliminary H'rg, at 7, 9-10, 13-14; N.T., *Habeas* H'rg, at 18. In response, at both hearings, the Commonwealth confronted Liggins with her prior statements. **See** N.T., Preliminary H'rg, at 9-10; N.T., *Habeas* H'rg, at 8, 15-16. Subsequently, at Appellant's jury trial, Liggins refused to testify at all. N.T., 3/20/17, at 76-78. Therefore, the trial court permitted the Commonwealth to read to the jury Liggins's prior testimony at both the preliminary hearing and *habeas* hearing. **See id.** at 86; N.T., 3/21/17, at 61, 73. Liggins's written statement to police was read into the record *via* her testimony at Appellant's *habeas* hearing. N.T., 3/21/17, at 84.

Furthermore, we note that on direct appeal, Appellant challenged, *inter alia*, the trial court's evidentiary rulings admitting both the 911 call and

---

not abuse its discretion in admitting the 911 call into evidence "as a present sense impression exception to the rule against hearsay." **Wynn-Turner**, 1410 MDA 2017 (unpub. memo. at 17).

Liggins's written police statement into evidence. *See Wynn-Turner*, 1410 MDA 2017 (unpub. memo. at 11-18). With regard to the written police statement, this Court concluded the trial court properly admitted the statement:

> The written statement was used as a prior inconsistent statement to impeach Ms. Liggins's contradictory statement that Appellant did not have a gun. A non-party witness may be cross-examined on prior statements they have made when those statements contradict their in-court testimony. *Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa. Super. 2002). As noted, prior inconsistent statements are admissible for impeachment purposes. *Id.* Moreover, a prior inconsistent statement may be offered as substantive evidence if it meets additional requirements of reliability: 1) was the statement given under reliable circumstances; and 2) was the declarant available for cross-examination. *Id.*
>
> We are cognizant that *Carmody* contemplates prior inconsistent statements on cross-examination. However, it is within the trial court's discretion to permit a party to impeach its own witness with prior inconsistent statements. *Commonwealth v. Grimes*, 648 A.2d 538, 543 (Pa. Super. 1994).
>
> Here, when Ms. Liggins refused to testify at trial, the Commonwealth sought to treat her as a hostile witness as on cross-examination. The trial court did not specifically rule on this because the court opined that Ms. Liggins was refusing to answer any questions, hostile or otherwise. The trial court then inquired if the Commonwealth had any prior statements made by Ms. Liggins. The Commonwealth proceeded to ask Ms. Liggins if she had made that prior inconsistent statement, and she agreed that she had. Moreover, we note that Ms. Liggins read the written statement into evidence at the preliminary hearing, and the notes of testimony from that hearing were admitted into evidence.[9]

_____

[9] This appears to be a misstatement. Liggins read her written police statement into evidence during the **habeas hearing**, not the preliminary hearing. *See* N.T., 2/29/16, at 15-16. Nevertheless, the transcript from the *habeas* hearing

> While Ms. Liggins was clearly unavailable for cross-examination at trial, which is required for the statement to be admitted as substantive evidence under **Carmody**, she was available when the statement was read into the record at the [prior] hearing as noted by the court. Ultimately, we conclude that the portions of the written statement introduced via the trial court's discretion and through prior testimony were properly admitted.

**Wynn-Turner**, 1410 MDA 2017 (unpub. memo at 13-14) (record citations omitted). Thus, this Court determined Liggins's written statement to police was admissible as both impeachment **and substantive** evidence. **See Carmody**, 799 A.2d at 148 (holding prior inconsistent statement may be admissible as substantive evidence when (1) it is "given under reliable circumstance[,]" such as reduced to writing and signed by the declarant, and (2) the declarant is available for cross-examination, even if cross examination occurred at a prior hearing).

Accordingly, because this Court determined on direct appeal that Liggins's written police statement was admissible as substantive evidence, Appellant's present claim has no arguable merit. Indeed, trial counsel had no basis to request a jury instruction limiting its consideration of the statement as impeachment evidence only. Thus, his first claim fails.

Next, in a related claim, Appellant contends Attorney Bellfy was ineffective for failing to "make a standard hearsay objection to inadmissible hearsay contained within Ms. Liggins['s] preliminary hearing testimony[.]"

---

was also read into evidence during Appellant's jury trial. **See** N.T., 3/21/17, at 73-87. Moreover, Appellant, acting *pro se*, had the opportunity to cross-examine Liggins concerning this prior inconsistent statement at the *habeas* hearing, although he questioned her only about her contradictory statement in the 911 call. **See** N.T., *Habeas* H'rg, at 17-18.

Appellant's Brief at 16. Again, Appellant focuses on Ms. Liggins's written statement to police. At the preliminary hearing, the written statement was not read into evidence; rather, the Commonwealth questioned Ms. Liggins about her prior inconsistent statement in the following exchange:

> [Commonwealth:] You also provided police with a written statement; is that correct?
>
> [Liggins:] Yes.
>
> [Commonwealth:] You see this document that I'm holding up? That is your handwriting?
>
> [Liggins:] Yes.
>
> [Commonwealth:] And that's your signature at the bottom?
>
> [Liggins:] Yes.
>
> [Commonwealth:] And in that you state that [Appellant] said that he pulled out a gun and said, You better send me to jail soon because I feel like killing you?
>
> [Liggins:] Yeah.
>
> [Commonwealth:] Did you write it?
>
> [Liggins:] Yeah, I just wrote it.
>
> [Commonwealth:] And it is your claim today that there was no gun?
>
> [Liggins:] No gun.

N.T., Preliminary H'rg, at 10. Further, as noted above, during the subsequent *habeas* hearing, the Commonwealth asked Liggins to read her written police statement into the record. N.T., *Habeas* H'rg, at 15-16. The transcripts of both of these hearings were later read into the record at trial after Liggins refused to testify. N.T., 3/20/17, at 77, 92; N.T., 3/21/17, at 61-87.

Although on direct appeal, Appellant challenged the court's ruling admitting Liggins's written statement *via* her *habeas* testimony, he now appears to argue that counsel should have "raised a standard hearsay objection to the admission of Ms. Liggins'[s] written statement contained within the preliminary hearing testimony from June 29, 2015." **See** Appellant's Brief at 20. We conclude his argument fails all three prongs of the ineffectiveness test.

The Commonwealth's reference to Liggins's prior written statement was permissible at the preliminary hearing for the same reasons it was permissible at the *habeas* hearing: the prior inconsistent statement was given under reliable circumstances and Liggins was available for cross-examination. **See** **Wynn-Turner**, 1410 MDA 2017 (unpub. memo. at 13). Thus, counsel had no basis to object to this testimony from the preliminary hearing transcript. Moreover, Appellant cannot demonstrate he was prejudiced by the reference to Liggins's prior statement in the **preliminary hearing** transcript since Liggins read her **entire statement** into the record at the *habeas* hearing, and, as we determined **supra**, that transcript was properly read into the record at trial. Therefore, Appellant's second claim fails. **See Johnson**, 139 A.3d at 1272.

In his third issue, Appellant asserts Attorney Bellfy was ineffective for failing to utilize an "exculpatory" notarized affidavit, authored by Liggins on May 22, 2016, in which she averred she had written a "false statement" about Appellant in April 2015, and that Appellant "never possessed the gun that was

- 12 -

found that day that [she] made [the] false allegations." ***See*** Affidavit of Lakiesha Marie Liggins, 5/22/16. Although the affidavit was marked as Commonwealth Exhibit 11 at trial,[10] it was not introduced by either party. In its Rule 907 notice, the PCRA court opined that the affidavit was hearsay, and not subject to any exceptions. Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 at ¶ 2(B). However, on appeal, Appellant maintains the affidavit was admissible pursuant to Pennsylvania Rule of Evidence 806, "Attacking and Supporting the Declarant's Credibility."[11] Furthermore, while he recognizes "[t]he jury did hear that [ ] Liggins recanted her claim that [he] possessed a gun on the date in question" through Liggins's *habeas* hearing testimony, Appellant contends that testimony was "effectively impeached by the Commonwealth," and, therefore, he was prejudiced when Attorney Bellfy failed to use the affidavit to "**support** the credibility of [ ] Liggins' *habeas corpus* testimony." Appellant's Brief at 25 (emphasis added).

_____

[10] ***See*** N.T., 3/20/17, at 79-80.

[11] Rule 806 provides:

> When a hearsay statement has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination.

Pa.R.E. 806.

We need not address whether the May 2016 affidavit was admissible under Rule 806 because we conclude Appellant cannot demonstrate he was prejudiced. *See Miller*, 231 A.3d at 991. Indeed, at both Appellant's preliminary hearing and *habeas* hearing, Liggins testified under oath that Appellant did not possess a firearm on the night in question. Her sworn testimony from both hearings was read to the jury at trial. The Commonwealth then attempted to discredit her by introducing her 911 call and written statement to police from the night of the incident, in which she stated Appellant threatened her with a firearm. The fact that Liggins signed an affidavit admitting she lied in her initial statement **after** both the preliminary hearing and *habeas* hearing, renders the affidavit superfluous. Appellant already had the opportunity at both prior hearings to cross-examine Liggins concerning why she purportedly initially lied to the police. *See* N.T., Preliminary H'rg, at 13 (Liggins testified she told police Appellant had a gun because she "just wanted him out of the house [and] figured they wouldn't make him leave because he's a resident there"); N.T., *Habeas* H'rg, at 17-18 (same). Thus, by the time Liggins signed the affidavit, she had already recanted her prior statement to police under oath in two separate hearings. Because Appellant cannot demonstrate "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's" failure to introduce Liggins's May 2016 affidavit, we conclude no relief is warranted. *See Johnson*, 139 A.3d at 1272.

Appellant's fourth claim alleges Attorney Bellfy's ineffectiveness for failing to object to purported improper arguments in the Commonwealth's opening and closing statements to the jury. *See* Appellant's Brief at 27. Appellant insists the Commonwealth committed misconduct when it argued that the jury should consider Liggins's April 2015 written police statement as substantive evidence, "beyond the limited purpose it was admitted." *Id. See also* N.T., 3/20/17, at 71-72; N.T., 3/21/17, at 119-20. However, the fallacy with this claim is that this Court held on direct appeal that Liggins's statement to police was admissible as both impeachment **and substantive** evidence. *Wynn-Turner*, 1410 MDA 2017 (unpub. memo at 13-14). Thus, Appellant's present allegation has no arguable merit. *See Johnson*, 139 A.3d at 1272.

In his penultimate issue, Appellant insists Attorney Bellfy was ineffective for failing to request the redaction of a racial slur from the 911 call. Appellant's Brief at 31. Appellant maintains that during the call, Liggins stated "I don't give a fuck about no nigga."[12] *Id.* The 911 call was played twice for the jury — once during the Commonwealth's case-in-chief and a second time during deliberations when the jury requested to hear the recording again. *See* N.T., 3/20/17, at 95; N.T., 3/21/17, at 157. Appellant argues "[c]ompetent trial

---

[12] We note the recording of the 911 call is not included in the certified record, and the PCRA court believed Liggins stated, "I'm not talking about no nigger." Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 at ¶ 2(H). However, regardless of what Liggins actually stated, both the PCRA court and Commonwealth agree she referred to Appellant by a racial slur. *See id.*; Commonwealth's Brief at 18.

counsel would not allow the Commonwealth's attorney to present evidence that referred to Appellant in such a hateful manner when it could have easily been redacted." Appellant's Brief at 31. Further, he asserts that "[e]ach time the word . . . was played loudly and echoed throughout the . . . courtroom, [he] felt so small and helpless because [he] was the 'nigga.'" *Id.* at 32.

Again, we conclude no relief is warranted. As the PCRA court found in its Rule 907 notice, "Ms. Liggins used [a racial slur] during a phone call she made to 911, while she was in an excited emotional state, shortly after she was threatened by [Appellant] at gunpoint while her child and mother were also in the residence." Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 at ¶ 2(H). The court noted that the Commonwealth did not refer to Appellant "in any derogatory or offensive manner." *Id.*

Furthermore, Appellant has also failed to demonstrate he was prejudiced. Indeed, the trial court specifically inquired of the jury during *voir dire* whether anyone believed "that [Appellant's] race would play any part whatsoever in deciding whether or not he is guilty of any of the crimes charged[.]" N.T., 3/20/17, at 41. No juror responded affirmatively. *Id.* Appellant's only allegation of prejudice in his brief is that Liggins's use of the racial slur made him feel "small and helpless." Appellant's Brief at 32. He has failed to demonstrate "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's" failure to seek redaction of the racial slur in the 911 call. *See Johnson*, 139 A.3d at 1272. Thus, this claim fails.

Lastly, Appellant raises a claim of cumulative error, arguing "Attorney . . . Bellyfy's errors viewed cumulatively denied Appellant a trial worthy of confidence." Appellant's Brief at 34. Appellant recognizes that "Pennsylvania State Appellate Courts have consistently rejected the idea that cumulative error can lead to post-conviction relief if the claims have no arguable merit." Appellant's Brief at 33. *See Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) ("This Court has repeatedly held that 'no number of failed [ineffectiveness] claims may collectively warrant relief if they fail to do so individually.'") (citations omitted). Nevertheless, he maintains the Pennsylvania Supreme Court has held that "issues that are dismissed based on a lack of prejudice will be considered together." Appellant's Brief at 33. *See Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) ("When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed."); *Johnson*, 966 A.3d at 532 ("[I]f multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation."). Based solely on his bald allegation that Attorney Bellfy's cumulative "errors" denied him a fair trial, Appellant insists he is entitled to relief.

We disagree. First, we emphasize that of the five ineffectiveness claims Appellant has raised on appeal, we deny three based on lack of merit, and only two based solely on lack of prejudice — Attorney Bellfy's alleged failure to introduce Liggins's May 2016 affidavit, and her alleged failure to seek

- 17 -

redaction of a racial slur from the 911 call. We cannot conclude that these purported errors, even considered together, resulted in cumulative prejudice warranting relief. *See Spotz*, 18 A.3d at 321 (noting that with regard to the one claim and three sub-claims the Court denied based on lack of prejudice, the "claims [were] independent factually and legally, with no reasonable and logical connection that would have caused the jury to assess them cumulatively"). Accordingly, Appellant is entitled to no relief on his final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020