J-A22029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID JOSEPH BOSH | : | |
| | : | |
| Appellant | : | No. 1369 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003348-2022

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: JANUARY 13, 2025**

David Joseph Bosh appeals from the judgment of sentence entered following his convictions for prohibited offensive weapons and persons not to possess firearms.[1] He challenges the admission of hearsay evidence through the excited utterance hearsay exception. We affirm.

Bosh's convictions stem from an incident in December 2021 involving Jennifer Whalen. Bosh proceeded by way of a jury trial. Before trial, the Commonwealth moved *in limine* to admit Whalen's statements to Pennsylvania State Trooper Kevin Berkeybile and Corporal Adam Janosko. **See** Commonwealth's Motion *in Limine*, filed 7/10/23. The court held an in-camera hearing on the motion immediately before trial. **See** N.T., Jury Trial Day 2, 7/11/23, at 3. The evidence presented at the hearing was as follows.

---

[1] 18 Pa.C.S.A. §§ 908(a) and 6105(a)(1), respectively.

Trooper Berkeybile testified that he received a call from a 911 operator explaining that there was a call "that a female had been duct taped, tied up, and held at gunpoint." ***Id.*** at 6, 12, 14. Trooper Berkeybile arrived on the scene approximately 25 minutes after the call. ***Id.*** at 14. Upon arrival, he pointed his rifle toward the home since the call conveyed that "there could possibly be someone armed inside the house." ***Id.*** at 6. He then saw Whalen running from the house. ***Id.*** at 7. He described that she ran frantically from the home and that she was crying and shaking. ***Id.*** Whalen's wrists were also bound together with duct tape, and she was breathing heavily. ***Id.*** at 7, 15, 18. Trooper Berkeybile testified that based on his experience as a police officer and a Marine, Whalen's behavior was more consistent with someone under stress than with someone relieved to see the police. ***Id.*** at 19-20. After Whalen ran from the home, Trooper Berkeybile placed her behind his vehicle and asked her if the "man inside the house still had the rifle or a gun." ***Id.*** at 7. Whalen replied that she did not know. ***Id.*** Trooper Berkeybile also asked, "Did he have a gun?" and Whalen responded, "[Y]es. At one point he had a gun. I don't know if he has it now." ***Id.*** at 8. Trooper Berkeybile understood that the man Whalen was referring to was Bosh. ***Id.*** at 6.

Corporal Janosko testified that he heard a call over the police radio about "a female being held against her will with a shotgun." ***Id.*** at 22. Since he was in the area, he headed to the location. ***Id.*** Upon arrival, he "took up a stationary position to the right of the house . . . and maintained visual surveillance" of the house until Trooper Berkeybile arrived. ***Id.*** at 23. He

eventually saw Whalen run from the house toward Trooper Berkeybile's vehicle. *Id.* at 23-24. He moved to where Trooper Berkeybile was and saw that Whalen was having difficulty catching her breath and was "very erratic, upset[.]" *Id.* at 24. He noticed that her wrists were duct-taped together and that "[h]er makeup was running down her face." *Id.*

Seconds after Whalen's conversation with Trooper Berkeybile, Corporal Janosko asked Whalen, "[W]hat's going on?" *Id.* at 36. Whalen told him, "He's still in the house. Don't shoot him. The kids are in the house[.]" *Id.* Approximately 15 or 20 minutes later, Corporal Janosko spoke with Whalen again who told him that there was a shotgun under a mattress in the home. *Id.* at 26, 37. Corporal Janosko executed a search warrant on the home and recovered a shotgun between the mattress and box spring in a bedroom. *Id.* at 28.

The court determined that Whalen's statements to Trooper Berkeybile and her initial statement to Corporal Janosko were admissible as excited utterances. *Id.* at 39-40. It concluded that the questions the officers asked "were asked to diffuse the situation." *Id.* at 40. The court also noted Whalen's demeanor when she made the statements, including "that she was still crying, was upset." *Id.* at 39. It determined that Whalen's second statement to Corporal Janosko regarding the location of the shotgun was not an excited utterance and therefore not admissible. *Id.* at 41, 42.

Following trial, the jury found Bosh guilty of the above-mentioned offenses. The court sentenced him to five to 10 years' imprisonment followed

by one year of reporting probation. N.T., Sentencing Hearing, 10/27/23, at 12-13. This timely appeal followed.

On appeal, Bosh argues that the trial court erred "in allowing hearsay evidence of the declarant under the 'excited utterance' exception to the hearsay prohibition when such evidence did not meet the requirements of the exception." Bosh's Br. at 2.

Bosh claims the trial court erred in admitting Whalen's statement because it was hearsay, and the excited utterance hearsay exception did not apply. While Bosh agrees that Whalen was "obviously quite upset" according to the trooper's testimony, he claims it is not obvious whether her emotional state was due to "the events that may have occurred before the Troopers' arrival." *Id.* at 11. He argues that "sufficient time had passed" such that her statement was a product of "her reflective faculties." *Id.* at 12. Bosh further notes that Whalen's statements were not spontaneous since they were made in response to the troopers' questioning.

We review the admission of evidence for an abuse of discretion. *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa.Super. 2020). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(c). Hearsay is not admissible unless an exception applies. Pa.R.E. 802. One such exception is an excited utterance, which is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). An excited utterance does not need to "describe or explain the startling event or condition[.]" *Id.*,

- 4 -

comment. Rather, it is sufficient if the statement "only relate[s] to it[.]" *Id.* (emphasis removed). The statement does not need to "be made contemporaneously with, or immediately after, the startling event." *Id.* "[I]t must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event." *Commonwealth v. Murray*, 83 A.3d 137, 157–58 (Pa. 2013) (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 496 (Pa. 2009)). A statement made in response to questioning is not categorically disqualified from being admitted as an excited utterance so long as it meets the requirements of the excited utterance exception. *See Commonwealth v. Jones*, 912 A.2d 268, 282-83 (Pa. 2006).

When determining whether a statement qualifies as an excited utterance, "the court must consider, among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa.Super. 2002). There is no specific time within which the statement must be made following the startling event for the statement to be admissible. *See Commonwealth v. Wholaver*, 989 A.2d 883, 906-07 (Pa. 2010). Rather, the question "is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes

remain in abeyance." ***Commonwealth v. Gore***, 396 A.2d 1302, 1305 (Pa.Super. 1978).

Here, the court did not abuse its discretion in determining that Whalen's statements fell within the excited utterance hearsay exception. The evidence showed that Whalen's statements were made while under the stress of excitement of being duct-taped and held at gunpoint. Pa.R.E. 803(2). Trooper Berkeybile testified that when he arrived at the scene, Whalen came running from the house, with her wrists duct-taped. Whalen was crying, shaking, and breathing heavily. Notably, Trooper Berkeybile testified that based on his experience, Whalen's behavior was more like someone under stress, as opposed to someone relieved to see the police. Corporal Janosko similarly testified that Whalen spoke with him within seconds of speaking with Trooper Berkeybile, while her wrists were still bound, she was "very erratic, upset," and her makeup was running. Pa.R.E. 803(2). Although there was no testimony about the amount of time between Whalen's running from the house and her speaking with the troopers, there was no set amount of time following the startling event within which her statements needed to occur for her statements to be admissible. ***See Wholaver***, 989 A.2d at 906-07. Because Whalen's statements qualified as an excited utterance, the fact that they were made in response to questioning is of no consequence. ***Jones***, 912 A.2d at 282-83.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2025