**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FREDERICK RAYMOND CAMEJO, JR. | : | |
| | : | |
| Appellant | : | No. 1349 WDA 2024 |

Appeal from the Judgment of Sentence Entered October 4, 2024
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000412-2022

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: December 24, 2025**

Appellant Frederick Raymond Camejo, Jr. appeals from the judgment of sentence imposed after a jury convicted him of third-degree murder, discharge of a firearm into an occupied structure, and three counts of recklessly endangering another person (REAP).[1]  On appeal, Appellant claims that the trial court erred by admitting hearsay at trial.  After review, we affirm.

The trial court set forth the facts of the case as follows:

On May 29, 2022, in the early morning hours, . . . Edward Fomby, Jr. [(Victim)], was shot and killed in front of 166 Congress Street, Bradford, McKean County, Pennsylvania. . . .

Earlier in the evening of May 28, 2022, into the early morning hours of May 29, 2022, [] Appellant together with friends and family were patronizing some local bars.  They met [V]ictim and his friends (some of whom were also friends and/or acquaintances

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 2707.1(a), and 2705, respectively.

and/or family of Appellant and/or members of his group). After the bars closed, Appellant invited everyone, including [V]ictim, back to Appellant's house for a meal.

A number of people met back at Appellant's house located at 166 Congress Street. Appellant, and at least two (2) members of his family, and possibly one of [V]ictim's friends openly possessed firearms. [While i]t is unclear exactly why, although there was some testimony that Appellant felt [V]ictim had insulted Appellant's wife[, V]ictim and his group were asked to leave Appellant's house.

This led to an escalation of tension and emotion. Appellant remained on his front porch and [V]ictim left the residence but was on the street in front of the Appellant's house. Words and profanities were exchanged between [] Appellant and [V]ictim. Appellant had a handgun on his hip which was clearly visible. At no time was [V]ictim seen with a gun. The words intensified and [] Appellant was observed on his front porch flexing his muscles in [V]ictim's direction. Appellant testified the verbal exchange and flexing were his attempts to de-escalate the situation. At some point Appellant got a long gun and clearly displayed it in the direction of [V]ictim. Words continued to be exchanged, and Appellant pulled out his gun and fired several "warning shots" in what he claimed was a further attempt to de-escalate the tension.

Shortly before the Appellant fired warning shots and ultimately fatal shots, [V]ictim, Jordan Kornacki, and Kianti Dillard were leaving the scene. . . . Victim got into his car and turned to come back. Bystanders were yelling from the porch and Jordan Kornacki stated [someone on the porch] called [Victim] "a n****r."[FN2] [V]ictim got out of the car as the warning shots were fired.

> [FN2] The court notes that both [] Appellant and [V]ictim are men of color.

*　　*　　*

Eventually, [V]ictim approached Appellant's house and was on the front sidewalk and the walkway leading to Appellant's house. Appellant again pulled out his handgun and pointed it directly at [V]ictim saying he would kill or murder [V]ictim. He made this threat using various words several times. Each time [V]ictim responded that [] Appellant should go ahead and shoot. At one point, [V]ictim lifted his shirt and turned around to show he was

unarmed. [V]ictim then began walking away although he was still yelling in Appellant's direction.

It was at this point that Appellant fired several shots at [V]ictim striking him once in the back of the leg and three (3) times in the back. One of the shots also entered the house across the street with the owners inside at the time. [V]ictim fell on the sidewalk and died.

Appellant never denied shooting [V]ictim but claimed he acted in self[-]defense and defense of others. He also claimed he intended to shoot [V]ictim in the legs. Appellant claimed he acted because he believed [V]ictim yelled he would come back and kill everyone. Appellant believed [V]ictim was going to get a gun from one of his friends who had been seen with a gun earlier in the morning.

[V]ideo captured by [A]ppellant's own home security equipment [showed the events without audio]. However, the Commonwealth was able to obtain both video and audio captured from a neighbor's home security system[, which was synchronized with Appellant's home security video]. This synchronization showed [V]ictim yelling a profanity at [] Appellant as [V]ictim was walking away. Nothing showed [V]ictim threatening to come back and kill everyone as Appellant had claimed. The video clearly shows [] Appellant shooting the unarmed victim in the back as [V]ictim was walking away.

Trial Ct. Op., 4/11/25, at 4-7 (some formatting altered).

Appellant was charged with criminal homicide, discharge of a firearm into an occupied structure, and three counts of REAP. Appellant filed a motion to suppress, which the trial court granted. The Commonwealth subsequently filed an appeal from the order granting suppression. Ultimately, this Court reversed the trial court's order and remanded the matter to the trial court. *See Commonwealth v. Camejo*, 818 WDA 2023, 2024 WL 1155929 (Pa. Super. filed Mar. 18, 2024) (unpublished mem.).

On September 16, 2024, the case proceeded to a jury trial, after which Appellant was found guilty of the aforementioned charges. On October 4, 2024, the trial court sentenced Appellant to an aggregate term of twenty-two and a half to forty-five years' incarceration.[2]

Appellant filed a timely notice of appeal. The trial court issued an order directing Appellant to file a Rule 1925(b) statement but did not provide the address to which Appellant could mail the Rule 1925(b) statement. *See* Order, 2/3/25. Accordingly, this Court remanded the case back to the trial court to allow Appellant to file a Rule 1925(b) statement. *See id.* Thereafter, both the trial court and Appellant complied with this Court's order and Rule 1925.

On appeal, Appellant raises the following issue:

Did the trial court err when it allowed the admission of hearsay testimony on the basis that the excited utterance exception applied, where no foundation for that exception was established?

_____

[2] Specifically, the trial court imposed sentences of twenty to forty years' incarceration for third-degree murder, two and a half to five years' incarceration for discharging a firearm into an occupied structure, and six to twelve months' incarceration for two of the three counts of REAP. The trial court found that the additional count of REAP merged with third-degree murder. *See* Trial Ct. Order, 10/4/24. The trial court imposed the sentence for discharging a firearm into an occupied structure consecutive to the sentence for third-degree murder and imposed the sentences for each of the two counts of REAP concurrent to the sentences for third-degree murder and discharging a firearm into an occupied structure.

Appellant's Brief at 2 (some formatting altered).[3]

Appellant argues that the trial court erred by allowing the admission of hearsay during the testimony of Kianti Dillard. *See id.* at 7. Specifically, Appellant argues that Dillard's testimony regarding Jordan Kornacki's statement at the scene was not properly admitted pursuant to the excited utterance exception because there was no foundation that Kornacki's statement "was made as a result of an overpowering emotion caused by a shocking occurrence after having witnessed a sufficiently startling event."[4] *Id.* at 8-10 (internal quotation marks omitted).

_____

[3] We note that Appellant also raised a sufficiency claim in his Rule 1925(b) statement that he has abandoned on appeal. *Compare* Rule 1925(b) Statement, 3/24/25, **with** Appellant's Brief at 2. Since Appellant has abandoned this issue on appeal by not including it in his appellate brief, it is waived. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

[4] Kornacki also testified at trial stating that someone called Victim a racial slur, which resulted in Victim exiting his vehicle. *See* N.T., 9/17/24, at 86-88. Appellant did not object to that testimony. *See id.* Further, Appellant did not argue hearsay within hearsay when he objected to Dillard's testimony or in his appellate brief. *See id.* at 174-75; Appellant's Brief at 7-10. Accordingly, to the extent that Appellant is arguing that the racial slur itself was hearsay, that claim is waived. *See Commonwealth v. Ramos*, 231 A.3d 955, 957 (Pa. Super. 2020) (stating that "[i]t is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal" (some formatting altered and citation omitted)); *see also* Pa.R.E. 103(a); Pa.R.A.P. 302(a). In any event, the racial slur that resulted in Victim exiting his vehicle is not hearsay because it was not admitted for the truth of the matter asserted but rather for its effect on the listener. *See Commonwealth v. Fitzpatrick*, 255 A.3d 452, 458 (Pa. 2021) (explaining that "if [a] statement is intended to be used for some purpose other than
*(Footnote Continued Next Page)*

Our standard of review for evidentiary issues is as follows:

We review a challenge to the trial court's evidentiary rulings for an abuse of discretion. . . . The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary. Further, we will affirm a trial court's evidentiary ruling if the result is correct on any ground, without regard to the grounds on which the trial court relied.

*Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025) (citations omitted and some formatting altered), *appeal denied*, 344 A.3d 740, 79 MAL 2025, 2025 WL 2217650 (Pa. filed Aug. 5, 2025).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. *See* Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. *See* Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (citation omitted). "Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more

establishing its truth—*i.e.*, to show the effect that the statement had on the listener . . . then it would not be hearsay and, consequently, would be admissible for that non-truth purpose, subject to any other applicable evidentiary rules").

trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* (citation omitted).

One exception is an excited utterance, which is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). This exception applies regardless of whether the declarant is available as a witness. *Id.* To qualify as an excited utterance, the declarant must have spontaneously made the statement either while experiencing the startling event, or "so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Commonwealth v. Murray*, 83 A.3d 137, 157 (Pa. 2013) (citation omitted).

In applying the excited utterance exception, this Court has held that there is no particular time period after the startling event in which the statement must occur. *See Commonwealth v. Wholaver*, 989 A.2d 883, 906-07 (Pa. 2010). Rather, the question is whether the declarant was still under "nervous excitement" at the time the declarant made the utterance. *Id.* at 907 (quoting Pa.R.E. 803(2), cmt.). To determine whether a statement qualifies as an excited utterance, "the court must consider, among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa. Super. 2002) (citation omitted).

Another exception is a present sense impression, which is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). "For this exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory." *Id.*, cmt.

Here, the trial court concluded that Dillard's testimony regarding Kornacki's out-of-court statement was admissible as an excited utterance and addressed Appellant's issue as follows:

> [Appellant] objected to the testimony offered by Kianti Dillard wherein he quote[d] out of court statements by Jordan Kornacki, another witness. Specifically, Mr. Dillard testified that, after attempting to leave [the scene], "[Kornacki's] exact words were 'they called him a n****r' and [Victim's] jumping out the car. He's jumping out the car . . . When he jumped out the car, I just heard shots." . . . *See*, N.T. 9/17/2024 at 174. . . .
>
>                  \*     \*     \*
>
> The context of Mr. Dillard's testimony regarding what Ms. Kornacki stated was clearly related to the stress of the event that was unfolding: [] Appellant and Victim arguing, the shouting of a racial slur, and the Victim returning to the scene. The incident was clearly chaotic, stressful, and ultimately was one continuous event ending with the shooting of [] Victim. The words of Kornacki that were related by Dillard were in response to Victim "jumping out of the car" in response to the racial slur. The language used was clearly spontaneous and in direct reaction to the events that were unfolding, and, therefore, an indication as to the reliability of the statement. For this reason, it was appropriate for the Court to overrule the objection.

Trial Ct. Op., 4/11/25, at 10-11 (some formatting altered).

Following our review, we discern no abuse of discretion by the trial court in admitting Dillard's testimony about Kornacki's statement. *See Williamson*, 330 A.3d at 414. As noted above, Kornacki testified that she heard someone yell a racial slur at Victim before seeing him get out of his car. *See* N.T., 9/17/24, at 87-88. Dillard's testimony merely recounted what he heard Kornacki say as Kornacki was perceiving the events. *See id.* at 174 (recounting what Kornacki said, stating that Kornacki was looking back at Victim, and describing Kornacki's statements as "simultaneous" to the events being explained and the shooting). Therefore, we conclude that Dillard's testimony met the present sense impression exception to the rule against hearsay. *See* Pa.R.E. 803(1) & cmt. Since Kornacki's statement met the exception for a present sense impression, the trial court did not err by admitting Dillard's testimony. *See Williamson*, 330 A.3d at 414; *see* Pa.R.E. 803(1).[5] Accordingly, no relief is due.

Judgment of sentence affirmed. Jurisdiction relinquished.

---

[5] We acknowledge that, in its Rule 1925(a) opinion, the trial court justified its decision to admit the evidence on the basis of a different hearsay exception. *See* Trial Court Op. at 10-11. However, we reiterate that this court "will affirm a trial court's evidentiary ruling if the result is correct on any ground, without regard to the grounds on which the trial court relied." *Williamson*, 330 A.3d at 414 (citation omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/24/2025