J-S09024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEKIRR BROWN | : | |
| | : | |
| Appellant | : | No. 1261 EDA 2020 |

Appeal from the PCRA Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002118-2012

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 21, 2021**

Lekirr Brown (Appellant) appeals *nunc pro tunc* from the order entered on March 2, 2018, in the Philadelphia County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  He argues the PCRA court erred in denying relief on his claims of trial counsel's ineffectiveness for failing to: object to certain hearsay evidence, file a motion for mistrial, and communicate a plea deal offered by the Commonwealth.  For the following reasons, we vacate the order in part, and remand for an

_____

[1] 42 Pa.C.S. §§ 9541-9546.  As we discuss **infra**, Appellant has filed three PCRA petitions in this case.  The first resulted in the reinstatement of his direct appeal rights, which we do not consider for PCRA timeliness purposes.  **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013).  The second PCRA petition, filed February 20, 2015, and alleging trial counsel's ineffectiveness, resulted in the March 2, 2018, denial order currently appealed from.  The third PCRA petition successfully sought the instant *nunc pro tunc* reinstatement of Appellant's right to appeal from the March 2, 2018, order.

evidentiary hearing on whether trial counsel communicated the Commonwealth's plea offer to Appellant. We affirm in part on Appellant's remaining claims.

The facts of the underlying case are as follows. On November 12, 2011, at approximately 2:00 a.m., Zandar Cotton (Victim) and his girlfriend Erica White (Witness) were leaving the S&K bar on the corner of 24th and Wolf Streets in Philadelphia. N.T. Trial (Waiver) Vol. I, 7/30/12, at 16-18, 67. The Victim was shot in the stomach once. *Id.* at 22.

That same night, the Witness told police she "heard [two] gunshots and [saw the Victim[2]] lying on the ground. [The Victim told the Witness] he was shot." N.T. 7/30/12, at 75, 77-78. The Witness also told police that she and the Victim were not involved in any arguments that night. *Id.* at 78.

The Victim was transported to the hospital where he was treated for the gunshot wound. N.T. 7/30/12, at 23-24. On November 13, 2011, approximately 24 hours after being shot, the Victim gave a statement to police that he "heard a gunshot. [He] jumped in front of [the Witness] and [he] was shot." *Id.* at 38-39. The Victim heard "[a]t least one" gunshot. *Id.* at 47. The Victim did not see who shot him and was not in any arguments the night of the incident. *Id.* at 44-45. On November 14th, police reinterviewed the Victim and he stated when he walked outside of the bar, "there was an

_____

[2] The Witness referred to the Victim as her boyfriend, fiancé, and husband throughout her testimony.

argument. A guy shot me one time in the stomach." ***Id.*** at 54. The Victim identified Appellant in a photograph as the man who shot him. ***Id.*** at 59-60.

On November 15, 2011, the Witness gave a second statement to police. N.T. 7/30/12, at 83-84. She stated she has known Appellant "since he was little." ***Id.*** at 85. When asked whether she or the Victim had "any arguments or disagreements with anyone at the party," the Witness replied, "Not really," but stated that while outside the bar, she was talking to a woman named "Eisha"[3] and "a bunch of young girls from Wilson Park." ***Id.*** at 84, 88. Appellant was "getting into [her] conversation" and she told Appellant, "[G]et out of my face. No one is talking to you. You got my daughter's baby daddy sitting in jail almost doing life." ***Id.*** at 84-85. The Victim told the Witness to "come on" to leave, and as the Witness started walking, she saw the Victim fall. ***Id.*** at 85. The Victim told the Witness he had been shot. ***Id.*** The Witness stated she "didn't even hear a shot[,]" then "turned around and saw [Appellant] running away down Ritner Street towards the projects, Wilson Park." ***Id.*** The Witness identified Appellant in a photo array. ***Id.*** at 87. The Witness also told police "a bunch of young girls," whom the Witness did not know, "told [her] who shot [the Victim.]" ***Id.*** at 104, 108. However, when asked if she knew anyone who could identify the shooter or "tell [the police] about what happened that night," the Witness responded she did not, and she did not have any further information. ***Id.*** at 111. Furthermore, we note that

---

[3] This person is referred to as both "Eisha" and "Myesha" in the trial transcript.

at trial, the Commonwealth did not present evidence as to whether the group of girls actually identified the shooter to the Witness.

The trial docket includes an April 2, 2012, entry for an order granting a continuance, with the comment "Commonwealth's Offer Rejected[.]"[4]  **See** Criminal Docket at 3.  This appears to be a notation that Appellant rejected a plea offer.  This case proceeded to a non-jury trial on July 30, 2012, where the Commonwealth called the Victim, the Witness, and Philadelphia Police Detective John Frei to testify.

The Victim testified to the following.  He was leaving the S&K bar on November 12, 2011, when he saw the Witness "talking to [ ] some friends or something[,]" "saying her goodbyes[.]"  N.T. 7/30/12, at 25-26.  While leaving the S&K bar with the Witness, he was shot in the stomach.  **Id.** at 21-22.  The Victim denied Appellant was the shooter and stated he had never seen Appellant before the preliminary hearing in February.  **Id.** at 27, 29.  The Victim claimed that in his November 14, 2011, interview with police he was in the hospital and "[m]orphined [ ] up" and the detectives "filled in everything" and "gave [him] all the answers[.]"  **Id.** at 51, 54, 57-58.  The Commonwealth confronted the Victim with his prior statements to police, which the Victim continued to disclaim.  **Id.** at 38-61.

---

[4] "The PCRA Court attempted to locate the hearing transcript for April 2, 2012," but none existed.  PCRA Ct. Op., 8/26/20, at 11.

- 4 -

The Witness testified at trial to the following. She was saying goodbye to her friends at the S&K bar in the early morning hours when the Victim was shot. N.T. 7/30/12, at 67-68, 71. Appellant, whom she had known "since he was a little baby," was in the bar that night. *Id.* at 73. She did not hear any gunshots or see who shot the Victim. *Id.* at 71. The Witness denied having any argument with Appellant, but acknowledged they "had a little misunderstanding." *Id.* at 86-87. The Witness also denied knowing anyone named "Eisha" or "Myesha," and stated she did not "recall . . . anybody telling [her] who shot" the Victim that night. *Id.* at 88, 104. The Commonwealth confronted the Witness with her prior statements to police. *Id.* at 75-88, 101-11. The Witness likewise disclaimed her prior statements, testifying at trial that she was intoxicated and she did not know or did not recall what happened. *See id.* at 97, 100.

Detective Frei testified to the following. On November 12, 2011, he responded to the shooting in this matter. N.T. Trial (Waiver) Vol. II, 7/31/12, at 5-7. He interviewed the Witness that same night and interviewed the Victim in the hospital on November 13 and 14, 2011. *Id.* at 8, 11-12. During these interviews, the Victim was "conscious," "alert," and "coherent[,]" and did not have any trouble understanding the questions. *Id.* at 10, 14. The Victim identified Appellant as the shooter during the November 14th interview through a photo array. *Id.* at 15, 22-23. Detective Frei stated that during both interviews he "wrote [the answers] down as [the Victim] was responding" "word for word" to make sure they were "correct." *Id.* at 21-22. Both the

Victim and the Witness reviewed their statements and signed them. *Id.* at 16, 21.

Appellant did not testify or present any evidence. The trial court found Appellant guilty of attempted murder, aggravated assault, simple assault, possession of an instrument of crime, reckless endangerment of another person, possession of a firearm prohibited, and carrying firearms in public.[5] On December 10, 2012, the trial court sentenced Appellant to an aggregate term of 10 to 20 years' incarceration.

Appellant filed a timely counseled PCRA petition on February 26, 2013, which resulted in the reinstatement of his direct appeal rights *nunc pro tunc*. Appellant then appealed to this Court, which affirmed his judgment of sentence on June 16, 2014. *Commonwealth v. Brown*, 939 EDA 2013 (unpub. memo.) (Pa. Super. June 16, 2014), *appeal denied*, 315 EAL 2014 (Pa. Oct. 7, 2014). The Pennsylvania Supreme Court denied his petition for allowance of appeal on October 7, 2014.

On February 20, 2015, Appellant timely filed a *pro se* PCRA petition,[6] and an additional *pro se* petition on March 1, 2016, where he claimed his trial counsel, Joseph Santaguida, Esquire (Trial Counsel), was ineffective for, *inter*

---

[5] 18 Pa.C.S. §§ 901(a), 2702(a), 2701(a), 907(a), 2705, 6105(a)(1), 6108, respectively.

[6] Although the PCRA court referred to Appellant's February 20, 2015, petition as his "second PCRA petition," we treat it as his first for PCRA timeliness purposes. *See Turner*, 73 A.3d at 1286.

*alia*, failing to litigate issues relating to suppression and identification, and failing to prepare for trial. The record indicates that on October 3, 2015, the PCRA court appointed David Rudenstein, Esquire (PCRA Counsel), to represent Appellant. Appellant's Amended Petition Under Post-Conviction Relief Act, 3/20/20, at 4.

The trial court summarized the ensuing procedural history as follows:

> PCRA [C]ounsel filed an amended PCRA petition on May 9, 2017. On October 26, 2017, the Commonwealth filed a motion to dismiss the amended PCRA petition. [The] PCRA Court, after carefully reviewing the record, [Appellant's] filings, PCRA counsel's amended petition, and the Commonwealth's motion to dismiss, determined the issues raised by PCRA counsel lacked merit . . . . The PCRA Court sent [Appellant] a Pa.R.Crim.P. 907 notice of dismissal on January 22, 2018. [Appellant] filed a [*pro se*] Response in Opposition to [the PCRA] Court's Notice of Intent to Dismiss on February 2, 2018. . . . [O]n March 2, 2018, [the PCRA] Court issued an order denying [Appellant] post-conviction relief.
>
> On April 1, 2018, [Appellant] filed a Notice of Appeal of the dismissal of his PCRA petition. . . .
>
> [PCRA Counsel, however, did not file any appellate brief.[7]] The Superior Court remanded the case to the PCRA Court on August 23, 2018 for status of counsel and preservation of [Appellant's] appellate rights. On September 17, 2018 the PCRA Court [ ] found that [PCRA C]ounsel did not abandon [Appellant] and continued to be counsel of record. The PCRA Court ordered defense counsel to file a brief with the Superior Court within 3 days. [On April 26, 2019, the Superior Court dismissed Appellant's appeal on the ground his "submissions to [the] Court do not cite relevant case or statutory authority," and instead merely provide "two bald citations in support of three appellate

---

[7] PCRA Counsel later filed a letter in the Superior Court, stating he did not abandon Appellant, and his failure to file a brief was due to a death in his family. Letter from Attorney Rudenstein, 9/12/18.

issues." ***Commonwealth v. Brown***, 959 EDA 2018 (unpub. memo. at 3-4) (Pa. Super. April 26, 2019). This Court thus concluded Appellant's issues were waived for failure to file a proper brief and dismissed the appeal.]

[Appellant] filed his third PCRA petition [*pro se*] on August 8, 2019. [New PCRA counsel, Peter Levin, Esquire,] filed an amended PCRA petition on March 20, 2020[, requesting reinstatement of Appellant's right to appeal *nunc pro tunc* from the March 2, 2018, PCRA dismissal order. T]he Commonwealth filed its response on May 29, 2020 in which it stated it did not have any objection to [Appellant's] rights being reinstated under the new fact exception to the time requirements of the PCRA under ***Commonwealth v. Bennett***, 930 A.2d 1264 [(Pa. 2007), due to counsel's failure to file a brief]. The PCRA [c]ourt subsequently reinstated [Appellant's] right to file an appeal of the dismissal of his . . . PCRA petition, *nunc pro tunc*.

PCRA Ct. Op. at 3-4.

On June 23, 2020, Appellant filed a notice of appeal from the March 2, 2018, dismissal of his February 20, 2015, PCRA petition. Appellant timely complied with the PCRA court's order to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues on appeal:

[1.] Whether the PCRA Court erred in not granting relief as trial counsel was ineffective for failing to object to the prosecutor introducing the witness'[ ] own statements for rehabilitation purposes?

[2.] Whether the PCRA Court erred in not granting relief as trial counsel was ineffective for failing to file a motion for a mistrial as the prosecutor used excited utterance to substantiate prejudicial hearsay evidence?

[3.] Whether the [c]ourt erred in not granting relief as trial counsel was ineffective a[t] trial for failing to notify [ ] Appellant of a plea deal offered by prosecution?

[4.] Whether the PCRA Court erred in dismissing [ ] Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding counsels' ineffectiveness?

Appellant's Brief at 9.[8]

In his first issue, Appellant argues Trial Counsel was ineffective "for failing to object to the prosecutor introducing the Witness' [prior] statements [to police] for rehabilitation purposes." Appellant's Brief at 19. Appellant insists the Witness was not being impeached when the Commonwealth introduced the statements. *Id.* Instead, Appellant states, the Witness "stated she did not recall what happened the night of the incident[,]" and the Commonwealth "attempted to use these statements to rehabilitate [the Witness] despite there not being any express or implied charge of faulty memory." *Id.* at 19-20. Appellant contends these statements "were being offered as substantive [and] identification evidence to link [ ] Appellant as the perpetrator." *Id.* at 20. Appellant states his "case likely would have had a different outcome if the introduction of these statements was objected to [because] there would be minimal evidence linking [ ] Appellant to the scene." *Id.*

Appellant's argument does not specify any particular statements, either in the Witness' trial testimony or her prior statements to police. Nevertheless, we note he cites pages 75 through 85 of the July 30, 2012, trial notes of testimony. Appellant's Brief at 20; PCRA Ct. Op. at 6 n.3. We note that at

_____

[8] Appellant's claims have been reordered for ease of review.

these pages of the Witness' direct examination, the Commonwealth asked her if she "called the South Detectives the next day [after the shooting] anonymously and say that Lee-Lee from the projects shot [the Victim]?," and the Witness responded "No, I did not."[9]  N.T. 7/30/12, at 80.  The Commonwealth then asked the Witness if she knew "anybody who would have made that phone call[,]" to which she likewise responded, "No, I do not."  *Id.* Trial Counsel objected, asking "the question and answer be stricken[ ]" because it was "improper" to "assume[ ] that somebody did that."  *Id.* at 80-81.  The Commonwealth responded the question was "a fair impeachment question."  *Id.* at 81.  The trial court struck the portion of the Witness' "answer that went beyond that she does not know who made that call[,]" but overruled the objection to the question and the Witness' remaining answer.  *Id.* at 80-81.  We conclude no relief is due.

The standard of review for an appeal from the denial of PCRA relief is well settled:

> Our standard of review in PCRA appeals is limited to determining whether the findings of the PCRA court are supported by the record and free from legal error.  "The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review."

*Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (citations omitted).

---

[9] At trial, the Witness identified Appellant as "Lee-Lee, Lekirr."  N.T. 7/30/12, at 72-73.

[W]e also note that appellant is required to make the following showing in order to succeed with [an ineffectiveness of counsel] claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to satisfy any prong of this test will cause the entire claim to fail. Finally, counsel is presumed to be effective, and appellant has the burden of proving otherwise.

*Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (citations omitted).

The standard of review for the admission of evidence is as follows:

The admission or exclusion of evidence is within the sound discretion of the trial court, and . . . we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012).

Impeachment evidence may be used "[f]or the purpose of attacking the credibility of **any** witness[.]" Pa.R.E. 609(a) (emphasis added). Pennsylvania Rule of Evidence 613(a) defines the accepted use of a prior inconsistent statement:

A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness'[ ] credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

Pa.R.E. 613(a).

Further, this Court has stated:

Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those

- 11 -

statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. . . . P.R.E. 613(a). Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability. . . . P.R.E. 803.1. The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination.

**Commonwealth v. Carmody**, 799 A.2d 143 (Pa. Super. 2002) (some citations omitted).

The PCRA court found the statements to which Appellant refers were used not as rehabilitation evidence, but instead for the purposes of impeachment. **See** PCRA Ct. Op. at 8. The PCRA court stated:

[At trial, the Witness] disavowed the contents of her statement to police on November 15, 2011 and offered contradictory testimony that she did not have an argument with anyone prior to the shooting and she did not see the shooter. [N.T. 7/30/12, at 78-79.] The prosecutor then attempted to impeach by asking [the Witness], "Did you call the South Detectives the next day anonymously and say that [Appellant] shot [the Victim]?" [The Witness] replied that she had not made the phone call and asserted she did not know anyone who would have placed the call. **Id.** at 80. The prosecutor asked this question only for impeachment purposes rather than just as an attempt to introduce hearsay testimony, as [Appellant] claims. . . .

PCRA Ct. Op. at 7-8.

We agree with the PCRA court. The trial court did not abuse its discretion or commit an error of law when it allowed the Commonwealth to impeach its own witness. **See** Pa.R.E. 609(a); **Lopez**, 57 A.3d at 81. Additionally, Appellant's claim that Trial Counsel was ineffective for not objecting to the introduction of this evidence is without merit because Trial

Counsel did, in fact, object. **See** N.T. 7/30/12, at 80-81. For these reasons, this claim does not have arguable merit, and no relief is due. **See Jones**, 942 A.2d at 906.

In his second claim, Appellant argues "[T]rial [C]ounsel was ineffective for failing to move for a mistrial when the prosecutor used excited utterance to substantiate prejudicial hearsay evidence[.]" Appellant's Brief at 21. Here, Appellant first reiterates that at trial, the Witness testified "she did not recall anyone being at the scene nor anyone telling her who shot" the Victim. **Id.** at 22. The Commonwealth then introduced the Witness' prior statement to police, that she heard "'a bunch of young girls' saying they saw who shot" the Victim. **Id.** at 22, *citing* N.T. at 108-10. Appellant avers the trial court improperly admitted this statement under the excited utterance exception to the general rule against hearsay. In support, he contends that "[a]t no point . . . was there any indication of who the girls were, or was a time frame given to show the spontaneity of their statements regarding 'who shot['] the Victim" **Id.** at 22.

Appellant further states that when the Commonwealth confronted the Witness with her prior statement, Trial Counsel should have moved for a mistrial on the basis of inadmissible hearsay. Appellant's Brief at 22. Appellant contends he was prejudiced by this evidence because "it stated that there were unnamed individuals who witnessed [ ] Appellant commit the shooting [and] was used to identify [ ] Appellant as the shooter." **Id.** Appellant maintains "there would have been substantially less evidence

against" him if the trial court did not admit this evidence and "the Commonwealth likely would not have been able to prove [he] was guilty." *Id.* Appellant insists that "[a]lthough [T]rial [C]ounsel did object to the hearsay evidence, [he] should have moved for a mistrial [because t]he prejudicial hearsay evidence was used to identify [ ] Appellant as the shooter." *Id.* at 23. We conclude no relief is due.

Our Supreme Court has stated:

A motion for mistrial is a matter addressed to the discretion of the court. A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.

*Commonwealth v. Fletcher*, 750 A.2d 261, 269 (Pa. 2000) (citations omitted).

Pennsylvania Rule of Evidence 803(2) defines the excited utterance exception to hearsay as:

A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

Pa.R.E. 803(2).

Here, Trial Counsel did object, repeatedly, to the Witness' prior statement to police regarding the "young girls" outside the bar, on the grounds the line of questioning would lead to hearsay. N.T. 7/30/12, at 101-02. The Commonwealth argued the testimony would fall under the excited utterance exception, as "a shooting ha[d] just occurred[ and] anyone . . . in the area is

- 14 -

going to be under the influence of that exciting event." *Id.* at 102. Trial Counsel responded, "[T]here's no testimony as to when that statement was given. Was it the next day, two days later, or a week later? [ ] And we don't even know who said it." *Id.* He continued to argue against the admission of this evidence over seventeen pages of testimony. *Id.* at 93-109. The trial court ruled the testimony would be admissible under the excited utterance exception if the Commonwealth could "establish who said it." *Id.* at 102. The court then sustained Trial Counsel's objection. *Id.* at 103.

Appellant's argument that Trial Counsel was ineffective for not motioning for mistrial is without merit. After objecting time and time again to the admission of this hearsay evidence only for the trial court to overrule almost all his arguments, there was no reasonable basis for Trial Counsel to believe the trial court would grant a mistrial based on the same issue. Moreover, we disagree with Appellant's contention that the Witness' prior statement to police identified Appellant as the shooter. The Witness simply told police that "a bunch of young girls" told her who the shooter was, but did not state who the shooter was. N.T. 7/30/12, at 104, 108. Additionally, the Witness merely stated in her November 15, 2011, police interview that she saw Appellant running from the scene after the Victim was shot. *Id.* at 85. While the **Victim** did identify Appellant as the shooter during his November 14, 2011, police interview, Appellant raised no challenge to this statement in his PCRA petition. *Id.* at 15, 59-60. For the foregoing reasons, no relief is due.

In his third claim, Appellant argues Trial Counsel was ineffective for failing to notify him of the April 2, 2012, plea deal offered by the Commonwealth, which is listed as "rejected" on the trial court docket. Appellant's Brief at 23. Appellant avers his "case likely would have had a different outcome as he would have been able to consider taking the [plea] offer and potentially taken a lesser sentence than what he" received. *Id.* at 23-24.

> The Supreme Court of the United States has held:

> [A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

*Missouri v. Frye*, 566 U.S. 134, 145 (2012).

The PCRA court states that prior to Appellant's July 17, 2020, Rule 1925(b) statement, he "did not previously raise [ ] whether he had been informed of a plea deal." PCRA Ct. Op. at 11. Nevertheless, the court attempted to obtain a transcript of the April 2, 2012, proceeding, but none exists, and therefore it could not ascertain whether Appellant "was conveyed the guilty plea offer or if he was colloquied." *Id.* The PCRA court "requests that this issue be remanded for an evidentiary hearing." *Id.*

The Commonwealth does not object to a hearing on this issue, but notes both Trial Counsel and prior PCRA Counsel, Attorney Rudenstein, are now deceased. Commonwealth Brief at 19-20. The Commonwealth asserts that if

the PCRA court were to conduct a hearing, "it would proffer that the markings on its trial file indicate[ ] that [Appellant] was, in fact, present in court" on the day the offer was relayed to defense counsel. *Id.* at 20.

Upon review of the record, we note that on August 4, 2017, Appellant sent *pro se* correspondence to the PCRA court, asking if he was "offer[ed] a deal[.]" Appellant's *Pro Se* Correspondence, 8/4/17. Appellant claimed he "wrote both [his T]rial [Counsel] and the [Commonwealth] and got nothing in [r]eturn[.]" *Id.* Furthermore, this issue was raised in Appellant's February 2, 2018, *pro se* response to the PCRA court's Rule 907 dismissal notice. Appellant's Response in Opposition to this Court's Notice of Intent to Dismiss, 2/2/18. Appellant attached a letter to former PCRA Counsel, Attorney Rudenstein, dated April 5, 2017, stating he just learned from a relative that the Commonwealth proposed a plea offer and requesting this issue be raised. *Id.* at Exh. A. Appellant averred he had not "received any filings by or from" Attorney Rudenstein and did not know "what was filed[,]" but wished "to preserve" the claim. *Id.* Appellant further stated "Trial [C]ounsel was ineffective for failing to inform [him] of the Commonwealth's plea offer[.]" *Id.* While hybrid representation is not permitted, *see Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011), we consider that the PCRA court requests an evidentiary hearing and the Commonwealth does not object. Thus, we conclude Appellant has sufficiently raised this issue before the PCRA court.

We agree with the court that remand for an evidentiary hearing is proper. Thus, while we conclude no relief is due on Appellant's first two issues,

we vacate the March 2, 2018, order and remand for further proceedings to determine whether Appellant knew of the plea offer relayed by the Commonwealth.

In his last claim, Appellant argues the PCRA court erred when it did not grant an evidentiary hearing on the issues raised in his amended PCRA petition. Appellant's Brief at 17. Appellant states "a court may not summarily dismiss a PCRA petition when the facts alleged in the petition, if proven, would entitle the Appellant to relief." *Id.*, *citing* **Commonwealth v. Barbosa**, 819 A.2d 81, 85 (Pa. Super. 2003). Appellant contends "[a] hearing should be held on any issue that the PCRA court is not certain lacks merit." *Id.* at 17-18, *citing* **Commonwealth v. Early**, 546 A.2d 1236, 1240 (Pa. Super 1988).

The PCRA court found Appellant's first two "claim[s] of ineffective assistance of counsel [have] no arguable merit and [Appellant] has not been prejudiced by the alleged error." PCRA Ct. Op. at 11. As discussed above, we agree, and therefore, no relief is due. However, for the reasons set forth above, we remand on the issue of whether Trial Counsel was ineffective for not notifying Appellant of a plea offer. **See Commonwealth v. Baumhammers**, 92 A.3d 708, 726 (Pa. 2014) ("The PCRA court need not hold a hearing on every issue appellant raises, as a hearing is only required on 'genuine issues of material fact.'") (citation omitted).

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/21/2021*